568 So.2d 296 (1990)
Marcus L. BUTLER
v.
John H. PEMBROKE, d/b/a Radio Station WOAD and Blackjac Radio, Inc., a Corporation.
No. 07-CA-59180.
Supreme Court of Mississippi.
October 10, 1990.
Reeves Jones, Jackson, for appellant.
Michael J. Malouf, Malouf & Malouf, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court:

I.
Courts have but a limited ability to right wrongs, to adjudge justly, notwithstanding much popular lore to the contrary. We may act only upon claims made and upon evidence presented, and at a considerable cost to the parties and the public. Lawsuits are and should be but a last resort. People have few disputes they could not settle among themselves more sensibly and more acceptably. Today's appellant in justice ought have full relief, but the law allows him but its modest approximation, as he cannot "prove" he is entitled to any more.

*297 II.
In the early 1980's, John H. Pembroke acquired radio station WOAD in Jackson, Mississippi, and, as well, Blackjac Radio, Inc., a Mississippi corporation, all of whose stock Pembroke owns. Earl O. Anderson served as business manager for WOAD. Marcus L. Butler was an employee and announcer for the station. The Reverend Mr. Butler is also pastor at the Amazing Church of God in Christ, Pentecostal Church, in Jackson.
WOAD was not doing well, and at Anderson's importunings Butler invested $12,000.00 in the radio station. Butler had a written agreement with WOAD that in return for his investment he would receive twenty (20%) percent of the net profits from its "inside and outside activities" from July 6, 1984, through February 14, 1985.
Time went by and WOAD paid Butler nothing on his investment. Butler took to the courts, proceeding ultimately on two fronts. He first sued Anderson and Pembroke in the present action, then settled separately with Anderson for a $12,000.00 promissory note, which Anderson neglected to honor. Butler then brought separate suit on the note and obtained a judgment against Anderson, who had originally bilked him of the $12,000.00, for the full principal amount of his investment plus interest and attorney fees. Anderson paid $600.00, took bankruptcy, and that was the end of that.
Butler then reinvigorated his original action, adding Pembroke's corporation, Blackjac Radio, Inc., as a Defendant and demanding that Pembroke and Blackjac cough up the agreed twenty (20%) percent of net profits. On June 22, 1987, the Chancery Court of the First Judicial District of Hinds County, Mississippi, honored Butler's claim in principle, holding he should have the agreed net profits. Acting under Rule 53, Miss.R.Civ.P., the Court appointed Thomas M. Tann, Jr., C.P.A., as Special Master and directed that he perform an audit of the books and records of radio station WOAD "to determine the net profit from the operations of the station from July 6, 1984, through February 14, 1985." In due course Special Master Tann reported that WOAD's books and records were a shambles, citing some sixteen categories of records that were needed for completion of the audit but could not be found. In the end, Tann reported that he was unable to perform his assigned task.
Eleven days later Butler moved the Court to withdraw its order that he recover the twenty (20%) percent net profits, and, in lieu thereof, give him back the $12,000.00 he invested in WOAD, plus interest, punitive damages and attorney fees. The Court called the parties back for a new hearing and rejected Butler's alternative suggestion on grounds that, notwithstanding the lack of accurate records, the evidence was fairly clear that WOAD was not making much money. Addressing Butler's counsel, the Court remarked "Your own man's investment was because it wasn't making money."
The parties deposed Special Master Tann and produced the deposition into evidence. Attached to that deposition is a not wholly explained statement entitled Income Summary, which reflects a net profit for the period in issue of $4,258.00. No one suggests that this figure could be verified by a credible audit performed according to generally accepted accounting principles. The Chancery Court accepted that figure "as the best that we can do with the evidence that is before the Court." The Court then computed Butler's twenty (20%) percent, deducted the $600.00 he had received from Anderson, and entered judgment in Butler's favor in the amount of $251.60 plus interest. The Court assessed Pembroke and Blackjac Radio, Inc. with all costs, including the costs of the Special Master.
Butler now appeals to this Court.

III.
The Reverend Mr. Butler is convinced WOAD was making a ton of money and will no doubt go to his grave so believing. The thrust of his appeal is an attack on the substantiality of the evidence supporting the Chancery Court's acceptance of the most modest $4,258.00 net profit figure. *298 What Butler fundamentally ignores is the quantum of evidence supporting the Court's ultimate finding that WOAD simply was not making any money to amount to anything during the operative period. This finding of fact is supported by substantial evidence and, on appellate review, must be accepted. See, e.g., Robinson v. Robinson, 554 So.2d 300, 304 (Miss. 1989); Williams v. Evans, 547 So.2d 54, 58 (Miss. 1989); Anderson v. Burt, 507 So.2d 32, 36 (Miss. 1987).

IV.
Butler tenders three issues, each of which is elusive if not enigmatic. He complains first that the Chancery Court erred when it failed to respect the report of Special Master Tann, to which no timely exception was taken. See Rule 53(g)(2), Miss.R. Civ.P. If we understand him correctly, Butler is arguing that the effect of Special Master Tann's report was that the net profits of WOAD could not be determined and that the Court was in error in proceeding thereafter to hear the matter further and attempt to find net profits. Butler sees this as the grounding for his reversal of field and pursuit of reimbursement of his $12,000.00 "to prevent unjust enrichment."
To begin with, it is not at all clear that a Special Master's report that his assignment cannot be completed is the sort of "report" contemplated by Rule 53(g). Even if we regard it a "report," only "the Master's findings of fact [must be accepted] unless manifestly wrong." Rule 53(g)(2), Miss.R. Civ.P. The Chancery Court takes no issue with the Master's only finding: that WOAD's net profits may not reliably be determined.
Butler, of course, has in mind the admittedly speculative nature of the $4,258.00 net profit figure ultimately accepted by the chancery court. What he overlooks is the fact that as plaintiff he bore the burden of proving his damages with reasonable certainty. If the "Income Summary"  which everyone agrees is not real reliable  is taken away and Master Tann's (non)finding is accepted, Butler loses, for he is then without any competent proof of the amount of his damages. See Stephens v. Brock, 568 So.2d 702, 704, (Miss. 1990); Kaiser Investments, Inc. v. Linn Agriprises, Inc., 538 So.2d 409, 415 (Miss. 1989); Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1353 (Miss. 1987). Butler's complaint here is at best harmless error.

V.
Butler next argues the Chancery Court erred at the "net profits" hearing when it allowed Pembroke to offer daily receipt logs and his bookkeeper's summary. The grounds are that these were not timely produced in response to his discovery request, see Rule 34, Miss.R.Civ.P., and, furthermore, that they do not possess sufficient reliability to constitute business records admissible within the familiar hearsay exception, Rule 803(6), Miss.R.Ev.
Without going into the details, Butler appears likely correct on both scores. His sweeping discovery request should have yielded these records, and the Court could have refused them on that ground. To be admissible under Rule 803(6)'s exception to the hearsay rule, the proponent must show that they possess indicia of trustworthiness. These don't. But again, if Butler succeeds in striking these records, he is left with nothing and a judgment of zero dollars rather than $251.60. These two errors as well are harmless.

VI.
Finally, Butler argues that unjust enrichment commands that he be given his money back. He grounds his claim in a theory that Pembroke and Blackjac Radio, Inc. had fiduciary duties to him as an investor to keep acceptable accounts and that they, not he, should bear the burden of the woeful state of WOAD's books and records.
Accepting that Pembroke and his corporation may indeed have owed such duties, the more discrete questions are whether that duty is breached by the failure to keep proper books and records and, if so, Butler's measure of damages. Were the Model *299 Business Corporation Act in effect at the relevant times, Blackjac's duty to keep records would be much clearer. Miss. Code Ann. § 79-4-16.01 (1989). That act was not in effect, leaving Butler to claim more tangentially that Pembroke and Blackjac's records failed to comply with Internal Revenue Service and Federal Communication Commission standards. Assuming arguendo that Butler is right in all of this, the serious question is whether his measure of damages is anything other than the profits he would have earned had Pembroke and Blackjac performed their duties to him.
In the end, Butler's argument founders the Chancery Court's square finding that WOAD and its owners were making little, if any, money during the time in issue. Butler himself acknowledged that the reason he put $12,000.00 into the company was that things were not going well financially. Without exception the witnesses at trial said the station was making very little money. In his brief Butler offers some speculative computations to the effect that certain sums were paid employees in commissions and, by reference to the commission rate of fifteen (15%) percent, there must have been major moneys coming in to the company coffers. We are told someone once offered Pembroke $450,000.00 to buy the company. None of this need detain us, for there is simply no basis for our disturbing the Chancery Court's general findings that WOAD's profits were modest at most. In this setting the Court was well within its equitable discretion in providing Butler that relief which, under the circumstances, bore the least improbability of being unfair to either party.
We accept without hesitation that the Reverend Mr. Butler was in law entitled to twenty (20%) percent of WOAD's net profits and to an accounting to establish same. We accept with regret that we may not order done that which may not be done. The law at its best may yield but a crude approximation of justice. The Court below did its best toward that end.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ANDERSON, J., not participating.