594 So.2d 1164 (1992)
Willeta Tanner MANNING
v.
Ervin H. TANNER.
No. 90-CA-0926.
Supreme Court of Mississippi.
February 12, 1992.
*1165 Gail D. Nicholson, Nicholson & Nicholson, Gulfport, for appellant.
Thomas M. Matthews, Jr., Wiggins, for appellee.
Before HAWKINS, P.J., and PITTMAN and McRAE, JJ.
PITTMAN, Justice, for the Court:

I.
By Final Decree dated December 3, 1980, Willeta and Ervin Tanner were granted a divorce by the Chancery Court of Stone County. Ervin Tanner was awarded custody of one minor child, Ervin Bryant Tanner, and Willeta was awarded custody of the other minor child, Russell Todd Tanner, with reasonable visitation vested in each party. Ervin Tanner was ordered to pay child support for Russell in the amount of $25.00 per week beginning December 5, 1980.
On January 20, 1983, Willeta filed a Complaint for Modification of Decree and Citation of Contempt alleging that Ervin Tanner was delinquent in the payment of child support for Russell, that he had prevented Willeta from exercising her visitation rights with Ervin Bryant, and that he had engaged in a course of conduct which was detrimental to the best interest of Ervin Bryant. She sought to have custody of Ervin Bryant changed to her, and to have Ervin's visitation rights extinguished.
By Final Decree dated April 29, 1983, the chancery court modified the original divorce decree and awarded custody of both children to Willeta, with limited visitation in favor of Ervin. The court increased the amount of child support to $50.00 per week. The court also found Ervin in contempt, awarded Willeta a judgment for the arrearage in the amount of $1,075.00, a judgment for attorney's fees in the amount $550.00, and assessed court costs against Ervin. He was ordered incarcerated until he purged himself of contempt.
Significantly, Ervin Tanner did not appear for this proceeding, but the court decree recited that "personal service of process was had upon the defendant in the manner and for the time required by law so as to require his appearance at this term of court. Therefore, this Court has jurisdiction of the parties and of the subject matter and may adjudicate herein."
On January 20, 1984, an unsigned Complaint was filed on behalf of Ervin Tanner alleging that he was incarcerated pursuant to the April 29, 1983 Final Decree, that he continued to have custody of Ervin Bryant Tanner (then 16), and that he was only $450.00 in arrears at the time the April 29th Decree was entered. He sought release from jail in order that he could return to work and support his children. He also sought to have child support reduced from $50.00 to $25.00 per week since Willeta still only had custody of one child. Finally, Ervin sought to have custody of both children returned to him, or to some suitable party other than the mother. Apparently, no process was had on Ms. Tanner.
According to a note from a Deputy Chancery Clerk to an Enforcement Officer with the Harrison County Department of Public Welfare, no action was taken on this latest complaint, and it was passed to the files on August 19, 1985. The last official order in this case was entered April 29, 1983.
However, the Harrison County Department of Public Welfare was under the impression that Ervin and Willeta Tanner had entered into an agreement on February 3, 1984 which was worked out by their attorneys, Garnett Harrison and Jack Parsons. There is an Agreed Order in the record which provides that the parties appeared in court on January 25, 1984 and announced through counsel that an agreement had been reached. The pertinent terms of agreement provided that Ervin Tanner would be released from jail, and that he would pay $300.00 toward the arrearage set out in the decree of April 29, 1983, plus the sum of $50.00 per week which would be *1166 paid via withholding through the Stone County Welfare Department beginning February 3, 1984. Of this $50.00 per week, $25.00 would go for the support of Russell Todd Tanner who resided with his mother, and $25.00 would go toward the arrearage. Once the arrearage was paid in full, child support payments from Ervin would revert to $25.00 per week as originally ordered.
This Agreed Order was never officially entered by the court, it does not bear the judge's signature, and is not part of the chancery court file. Notwithstanding, the parties, or Mr. Tanner at least, relied upon this Proposed Agreed Order, and he began making the scheduled payments via withholding through the welfare department pursuant to the terms of the agreement.
On January 5, 1990, Ervin Tanner filed a Complaint in the Chancery Court of Stone County alleging that Ervin Bryant Tanner had never resided with his mother, notwithstanding the change of legal custody on April 29, 1983, that Willeta never had the intention of taking custody of Ervin Bryant when the decree changing custody was entered on April 29, 1983, at her request, and that this conduct by Willeta amounted to a fraud upon the court justifying her conviction for contempt. He also alleged that he was not in arrears, and in fact had overpaid since April 29, 1983, and prayed for a judgment against Willeta in the amount of $1,240.14, plus attorney's fees.
Willeta answered the Complaint on March 5, 1990, and essentially denied the allegations. She also affirmatively alleged that Mr. Tanner was in fact in arrears on child support in the amount of $7,001.53, and in the amount of $500.00 for previously ordered attorney's fees. On April 13, 1990, Willeta filed a Motion for Citation of Contempt based on these alleged arrearages.
A hearing was held on April 18, 1990, and on the 16th of May, 1990, the chancery court entered it Findings and Conclusions. The court found in essence that Willeta "did in effect commit what this Court considers to be the equivalent of fraud upon this Court." It found that she made a "serious misrepresentation to the Court [which] borders on the legal equivalent of fraud."
The court's legal conclusion was based on its factual finding that Willeta, "after urging this Court to remove the custody of the minor [Ervin Bryant] from his father because of the dangers involved to the child ... did not take the next step and protect the child by removing him from the father's" custody. Furthermore, Willeta accepted increased child support payments from Mr. Tanner even though she never assumed physical custody of the child.
The court also found that Mr. Tanner spent seventeen (17) days in jail as a result of this legal action taken by Willeta. Mr. Tanner thought he was jailed for past due support and was advised to pay $50.00 per week to "catch up." Curiously, the chancellor found that both Mr. Tanner and Ervin Bryant Tanner were unaware that legal custody of Bryant had been changed by the April 29, 1983 decree.
The chancellor found as fact that Ervin Bryant continued to live with his father until "late October or early November, 1984, after which he moved to Gulfport, Mississippi, and stayed for uncertain periods of time with his mother until he finished high school by graduation." The court found specifically that Bryant did eat some meals at his mother's house, visited his brother Russell Todd on occasion, and sometimes slept there, but usually only after he had fallen asleep on the couch watching television. The chancellor found that, by this time, Ervin Bryant was, "for all practical purposes, emancipated and on his own."
The chancellor was "astounded to find that the mother ... allowed the minor, Bryant, to move into a trailer with his girlfriend [Bryant being only seventeen years of age at the time], and this on more than one occasion, and live with the girlfriend in a trailer court, at a time she, by decree at least, had documentary custody of Bryant."
The chancellor found these facts regarding the actual custody of Ervin Bryant to be overwhelmingly supported by the evidence, and justified a finding that Willeta *1167 had been unjustly enriched by over-payments of money for child support in the amount of $1,240.14. Accordingly, judgment in that amount was rendered against Willeta and in favor of Mr. Tanner.
The court also held, pursuant to Miss. R.Civ.P. 60 and Shaeffer v. Shaeffer, 370 So.2d 240 (Miss. 1979), that the decree of April 29, 1983 be set aside and declared null, void and of no further effect, thus reinstating the relevant provisions of the original divorce decree of December 3, 1980.
A Judgment was prepared in accordance with these Findings and Conclusions holding that Willeta had committed a fraud upon the court resulting in an overpayment by Mr. Tanner of child support, and justifying the vacation of the decree of April 29, 1983.
A motion to reconsider and amended motion to reconsider were filed by Willeta, and denied by the court on August 15, 1990. This appeal ensued.

II.
Preliminarily, Mr. Tanner attempts to raise for the first time on appeal that the decree of April 29, 1983 is void because of the insufficiency of process and a lack of personal jurisdiction. However, because Mr. Tanner has waited this long before raising such a defense, the claim has been waived. Miss.R.Civ.P. 12(h)(1).

III.
In the lower court, Chancellor Morris found that Willeta Manning's actions in successfully moving the court to modify the custody and child support provisions of the original divorce decree, and afterwards accepting increased child support payments without ever actually assuming physical custody of the second child, Ervin Bryant, amounted to the commission of fraud on the court, or at least was the equivalent of fraud. Based upon this belief, the chancery court set aside the decree dated April 29, 1983 which modified the original divorce decree.
In order to justify the setting aside of a decree as was done here, we have held:
A decree may be vacated ... for fraud in its procurement, or upon any such state of facts as constitutes the legal equivalent of fraud; as for instance, surprise, accident and mistake, so long as these have reference to facts, as distinguished from mistakes and surprise touching the law or in the application of the law to a state of facts already actually presented and considered. It is laid down broadly that the jurisdiction and power of a court of equity to relieve against fraud and legal equivalent thereof as respects judgments and decrees is as ample as it is to set aside a contract or other engagement procured or brought about by like means or under the operation of equivalent circumstances,  the dominant requirement being (1) that the facts constituting the fraud, accident, mistake or surprise must have been the controlling factors in the effectuation of the original decree, without which the decree would not have been made as it was made; (2) the facts justifying the relief must be clearly and positively alleged as facts and must be clearly and convincingly proved; (3) the facts must not have been known to the injured party at the time of the original decree, and (4) the ignorance thereof at the time must not have been the result of the want of reasonable care and diligence.
Shaeffer v. Shaeffer, 370 So.2d at 242, quoting Kemp v. Atlas Fertilizer & Chemical Company, 199 So.2d 52, 55 (Miss. 1967) (emphasis in original); see also Warner's Griffith, Miss. Chancery Practice § 642 (Rev.ed. 1991).
The vast majority of testimony at the latest hearing on April 18, 1990 centered on the actual custody of Ervin Bryant Tanner following the change of legal custody to Willeta on April 29, 1983, and also concerned the question of whether and when Ervin Bryant became emancipated. The chancellor essentially inferred from after-arising facts a fraudulent intent on the part of Willeta to have legal custody of Ervin Bryant changed from his father to her. He accepted the argument put forth *1168 by Mr. Tanner that Willeta sought a change in legal custody on specious grounds with no intent to assume actual physical custody of the child. This finding was error.
According to Shaeffer v. Shaeffer, the facts constituting fraud "must have been the controlling factors in the effectuation of the ... decree, without which the decree would not have been made as it was made." 370 So.2d at 242. Here, we refer to the decree of April 29, 1983, and the primary facts establishing the so-called fraud were those arising after the entry of this decree and involved Willeta's failure to put into effect the custody terms of that decree. Simply put, Willeta's intent prior to the entry of this decree was not established by clear and convincing evidence. As a result, we are compelled to hold that the chancellor erred when he set aside the April 29, 1983 decree.

IV.
The chancellor also held "even in the absence of fraud, the child, Bryant Tanner ... lived with his father up until late October, or early November, 1984 ... That although ... Bryant Tanner did visit on occasion with his mother, such visits were infrequent and of short duration, and the child did not become a dependent of Willeta Cara Dale Tanner Manning and was emancipated from the date he left his father's home. To allow the Defendant, Willeta Cara Dale Tanner Manning, under the facts and circumstances of this case to now demand child support payments in the amount of fifty dollars ($50.00) per week rather than the original sum of twenty-five dollars ($25.00) per week would be an unjust enrichment of her that this Court cannot condone especially since this Court, and this Judge, specifically increased the child support payable to her by 100% from $25.00 per week to $50.00 per week on April [2]9, 1983 because she was taking on the additional obligation for caring for an additional child."
Willeta claims it was error to find any unjust enrichment, and argues that a specified amount of child support awarded for the benefit of more than one child is not automatically reduced when one of the children becomes emancipated, citing Moore v. Moore, 372 So.2d 270, 271-72 (Miss. 1979). Undoubtedly, this is a correct statement of the law, but it simply is not applicable.
Instead, this issue is controlled by Alexander v. Alexander, 494 So.2d 365 (Miss. 1986). There the Court stated:
If we affirm the chancellor's back award of child support to Mrs. Alexander, we will create a situation of unjust enrichment in Mrs. Alexander. This is true because during the entire period of time for which Mrs. Alexander claimed support Mr. Alexander had the child in his custody, was supporting the child, and furthermore, was paying the child the $200.00 a month child support called for by the decree.
494 So.2d at 368; see also Koval v. Koval, 576 So.2d 134, 136-37 (Miss. 1991).
In this case, from April 29, 1983, and beyond, the period during which Willeta accepted increased sums of child support which she thought were for Ervin Bryant, Bryant was either in the custody of, and being supported by, his father, or was emancipated and on his own. The chancellor was not manifestly wrong in finding that Bryant never became a dependent of Willeta, and she never assumed anything other than infrequent, temporary physical custody of him. To allow her to collect increased sums of child support for this period even though she was not, as the court believed, taking on the obligation of supporting an additional child would "create a situation of unjust enrichment."
Admittedly, it does not appear that Mr. Tanner was paying directly to Bryant the $25.00 per week which represented the support increase on his behalf following change of custody to Willeta, as was being done in Alexander, nor does it appear that he was knowingly paying Willeta an additional $25.00 per week for Bryant since the court found he didn't know of the 1983 *1169 modification[1]; but this fact is not significant because Bryant was being supported by Mr. Tanner or was supporting himself. What is significant is that Willeta never assumed the additional support obligation of one child, thus obviating the basis and need for the increase in child support.
To the extent, therefore, that there has been an overpayment of child support by Mr. Tanner under the terms of the 1983 decree, the chancellor's finding of unjust enrichment is well supported by the law. But, whether in fact an overpayment has occurred is a question we find eminently more difficult to answer, at least on this record.

V.
The chancellor found as a result of the circumstances following the 1983 modification that Mr. Tanner overpaid child support to Willeta in the amount of $1,240.14, and awarded him a judgment in that amount plus interest. Having vacated the 1983 decree, and determined that Mr. Tanner always owed only $25.00 per week in child support, per the terms of the original divorce decree, the court then apparently made a mathematical determination based on the evidence presented to arrive at the amount of overpayment.
We are simply unable to determine from this record whether in fact Mr. Tanner has paid more to Willeta for child support than he was required. We must, therefore, remand this case to the chancery court so that an accurate determination can be made. In doing so, we hold the court's findings that Willeta never assumed any additional support obligations for Ervin Bryant, and that Ervin Bryant became emancipated in October-November, 1984, well supported by the record. Thus, notwithstanding the terms of the April 29, 1983 decree, Mr. Tanner never became liable to Willeta in any amount for the support of Ervin Bryant since Ervin Bryant never became a dependent of Willeta. Cf. Alexander v. Alexander, 494 So.2d 365, 368 (Miss. 1986). However, he may have been liable for an arrearage of child support previously ordered.
On remand, the chancery court should consider this fact and first determine what amount, if any, Mr. Tanner overpaid to Willeta for the support of his children. If it is found that he in fact overpaid, the amount of overpayment should be credited against any remaining arrearages owed by Mr. Tanner.
In the decree of April 29, 1983, the chancery court found Mr. Tanner in arrears for child support to that date in the amount of $1,075.00, and this amount may not be modified or extinguished in any way except by payment. Thurman v. Thurman, 559 So.2d 1014, 1016 (Miss. 1990). The court also ordered Mr. Tanner to pay $550.00 for attorney fees.

CONCLUSION
We note that for all practical purposes, the passage of time occasioned by this appeal has rendered the custody and support aspects of this case vis-a-vis Ervin Bryant moot. Since he is no longer a minor, Bryant Tanner may choose to live where ever he wants, and neither parent can be legally obligated to provide for his support, Nichols v. Tedder, 547 So.2d 766 (Miss. 1989).
Nonetheless, we reverse as to the court's finding of fraud on the part of Willeta Tanner Manning, and remand for specific findings on the calculation and amount of overpayment, if any. Any overpayment because of the failure of Willeta to actually assume custody of Ervin Bryant Tanner subsequent to April 29, 1983 should first be credited against the arrearage adjudged owing by Mr. Tanner, if any.
REVERSED AND REMANDED.
*1170 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Recall that Mr. Tanner claims not to have known that child support had been increased to account for change of custody of Bryant, but instead, he began paying increased sums of support after his incarceration on the belief that he was in arrears for the one child living with Willeta.