654 So.2d 26 (1995)
Julius WILLIAMS
v.
Shirley Butler Williams REMBERT.
No. 93-CA-00138-SCT.
Supreme Court of Mississippi.
April 6, 1995.
*27 Angela T. Miller, Miller & Miller, McComb, for appellant.
Gary L. Honea, Magnolia, for appellee.
En Banc.
PRATHER, Presiding Justice, for the court:

I. INTRODUCTION
Julius Williams (Julius) has appealed an order of the Chancery Court of Pike County, concerning the proper level of child support awarded in a contempt of court petition filed by his ex-wife, Shirley Butler Williams Rembert (Shirley). The court's first order forgave an arrearage of child support which Julius unilaterally stopped providing when one child moved out of the mother's household. On a Motion for Reconsideration, the chancellor corrected this judgment by requiring the father to pay this arrearage; the chancellor also increased the remaining child support award.
Julius appealed the ruling to this Court, asserting the following errors:
1) WHETHER THE CHANCELLOR COMMITTED REVERSIBLE ERROR IN SETTING ASIDE THE REPORT OF THE FAMILY MASTER WITHOUT DECIDING THAT THE SUPPORTING FACTS SHOW THAT THE REPORT OF THE MASTER WAS MANIFESTLY WRONG?
2) WHETHER THE CUSTODIAL PARENT WHO RECEIVED FULL CHILD SUPPORT DURING THE TIME SHE HAD CUSTODY OF THE CHILD IS ENTITLED TO AN ARREARAGE EVEN THOUGH THE CHILD WAS EMANCIPATED AT THE TIME SHE LEFT HOME THREE YEARS PRIOR?

II. STATEMENT OF THE FACTS
Julius and Shirley were divorced on January 5, 1982. The chancellor awarded Shirley custody of the three children of the parties and required Julius to pay child support of $500 monthly.
In June 1988, Julius III, one of the three children, moved out of Shirley's household. Julius, by agreed order, reduced his child support payments to Shirley to the amount of $333.67.
On February 19, 1989, Ursula, another child, left Shirley's household. At that time, beginning in February 1989, Julius reduced his child support payments to $200 monthly, without court modification. Shirley filed a contempt of court complaint against Julius in March 1992. The chancellor, upon receiving the complaint, referred the matter to Gerald McMillan, a Family Master.[1] Both parties submitted a stipulated set of facts by July 23, 1992.
The Family Master issued his report on September 19, 1992. The chancellor adopted the Family Master's opinion through an order on October 16, 1992. Both parties' attorneys signed this order as "Agreed as to Form and Content." The order forgave the majority of the child support arrearage which Julius had not paid upon Ursula's leaving the household.
Shirley made a Motion to Correct the Judgment and a Motion to Reconsider the Family Master Ruling on October 26, 1992. Shirley's attorney argued at a hearing on this motion that Shirley had intended to agree only to form and not content and that he overlooked the law which disallows unilateral reductions in child support. The chancellor granted the Rule 60(b) motion.
On December 14, 1992, the chancellor heard the motion for reconsideration of the October 16th order. The chancellor ruled that Julius could not unilaterally reduce child support payments without a court order. *28 The chancellor awarded $7,598.16, the full amount of the arrearage, to Shirley. The chancellor also fixed child support for the remaining child at $280 monthly. The chancellor also found Julius in contempt for reducing child support without court order, and awarded attorneys' fees to Shirley in the matter.
The chancellor entered a corrected judgment on December 18, 1992, affirming what he ordered in October, 1992, but mistakenly contradicting his December 14, 1992 judgment. The chancellor later entered an order on January 11, 1993, which formally set forth his holdings on December 14. This order granted Shirley the full arrearage and increased child support to $280 monthly child support for one child.
Aggrieved, Julius filed his notice of appeal on February 8, 1993.

III. ANALYSIS
The standard of review for a chancellor's ruling is to reverse a chancellor only where his decision is manifestly wrong or not supported by "substantial, credible evidence." Snow Lake Shores Property Owners Corp. v. Smith, 610 So.2d 357, 360 (Miss. 1992).

A) WHETHER THE CHANCELLOR COMMITTED REVERSIBLE ERROR IN SETTING ASIDE THE REPORT OF THE FAMILY MASTER WITHOUT DECIDING THAT THE SUPPORTING FACTS SHOW THAT THE REPORT OF THE MASTER WAS MANIFESTLY WRONG?
Julius cites several assertions of error within this issue. First, Julius cites Massey v. Massey, 475 So.2d 802, 804 (Miss. 1985) for the argument that Shirley waived any allegations of error by signing the judgment of the Family Master, under M.R.C.P. 53(g). However, Massey stands for the proposition that parties may waive procedural irregularities by signing the decree. Massey, 475 So.2d at 804. Shirley's problem with the Family Master's decision is an erroneous conclusion of law that the Master made in forgiving Julius' arrearage of child support.
Julius argues that M.R.C.P. 53(g) requires that a party object to findings of fact, or any problem with a master's decision, within ten days of notice of the filing of the report. However, the master's decision-that it was inequitable to requiring Julius to pay his arrearage-is a conclusion of law. This Court held that M.R.C.P. 53(g)(2) does not bar a chancellor from reexamining conclusions of law as needed. Butler v. Pembroke, 568 So.2d 296, 298 (Miss. 1990) (holding "only `the Master's findings of fact [must be accepted] unless manifestly wrong.'"); see also Arlen B. Coyle, Charles H. Walker, Walter W. Eppes, Jr., Time, Evidence, Subpoenas, and Master, Referees, and Commissioners  Rules 6, 43, 45, and 53, 52 Mississippi Law Journal 145, 162 (1982) (stating that "[w]hen the parties stipulate that the master's findings of fact shall be final, only questions of law shall thereafter be considered.").
As a result, the chancellor is within his authority to reopen any conclusions of law in a chancery case. As a conclusion of law is the issue here, the chancellor was correct in reviewing this case on a motion for reconsideration.[2]
*29 Julius also argues that the chancellor may not set aside the master's report without stating it is manifestly wrong. Merchants Fertilizer & Phosphate Co. v. Standard Cotton Gin, 199 Miss. 201, 208, 23 So.2d 906, 907 (1945). However, the chancellor properly found that no court has the authority to forgive past due child support arrearages. In doing so, the chancellor found manifest error in the master's ruling forgiving that arrearage.
Julius, in his brief, asserts that this Court disfavors bills of review and disallows them in negligence actions in civil suits. Fondren v. Bank of Franklin, 187 So.2d 304, 306 (Miss. 1966). A motion to reconsider in chancery court functions as a bill of review. Moreover, Julius contends that the legislature repealed the statutes allowing bills of review in 1991. Miss. Code Ann. § 11-5-119 (1972) (repealed 1991).
However, a new system of rules took the place of prior Mississippi practice. The Mississippi Rules of Civil Procedure, effective 1982, applies to both circuit and chancery courts. (Order Adopting the Mississippi Rules of Civil Procedure (1981)). These rules allow relief from a judgment on motion, and when justice requires, for six reasons, including "any other stated grounds justifying relief from the judgment." M.R.C.P. 60(b). For this reason, any decision on this case will revolve around the application of Rule 60.
Two mistakes occurred in this case which Shirley motioned to correct under Rule 60. First, Shirley made a Rule 60(a) motion to correct the October 16 judgment which had both parties agreeing in form and content. Shirley asserted that she had only intended to agree as to form, not content. Second, Shirley made a Rule 60(b)(2) and/or a Rule 60(b)(6) motion to overturn the October 16 judgment in light of law disallowing unilateral child support reductions.
As to the Rule 60(a) clerical change between agreeing in form and content, or form only, this change is not substantial. It is not substantial because under Rule 53(g)(2), a stipulation as to the content, concerning the findings of fact, does not preclude a chancellor's review of the conclusions of law. Butler v. Pembroke, 568 So.2d 296, 298 (Miss. 1990). Shirley cannot use Rule 60(b)(2) to correct the chancellor's judgment, based upon a mistake that her attorney made in not recognizing the master's failure to disallow unilateral reductions in child support. However, such a motion is possible under Rule 60(b)(6) under recent Mississippi caselaw.
This Court reversed a chancery court that dismissed a motion to reconsider, where the prior judgment effectively forgave a large sum of past-due child support. In Department of Human Serv. v. Rains, 626 So.2d 136, 138 (Miss. 1993), this Court held that despite Rule 60(b)(6)'s restrictions on such motions, "[c]onsidering this State's long-standing adherence to the principle that past due child support vests and cannot be forgiven absent payment, in the case sub judice, it was neither the attorneys' nor the chancellors' place to forgive the arrearage." Department of Human Serv., 626 So.2d at 138.
Stated most forcefully, the obligated spouse must pay accrued child support. Furthermore, the obligated spouse cannot reduce child support payments without court order. See Moore v. Moore, 372 So.2d 270, 271-72 (Miss. 1979) (holding that emancipation of one child does not allow unilateral prorate reduction of child support payments absent court modification.). An obligated parent may terminate child support payments when the only remaining child reaches the age of majority at twenty-one. Duncan v. Duncan, 556 So.2d 346, 347-48 (Miss. 1990); Wilson v. Wilson, 464 So.2d 496, 497 (Miss. 1985). Disputed questions of emancipation should be determined by the chancellor, and a prorate reduction may not be sufficient for a single remaining child.
As a result, the chancellor was correct in giving priority to our caselaw concerning child support over the procedural restrictions of M.R.C.P. 60(b)(6). The chancellor did not err.

*30 B) WHETHER THE CUSTODIAL PARENT WHO RECEIVED FULL CHILD SUPPORT DURING THE TIME SHE HAD CUSTODY OF THE CHILD IS ENTITLED TO AN ARREARAGE EVEN THOUGH THE CHILD WAS EMANCIPATED AT THE TIME SHE LEFT HOME THREE YEARS PRIOR.
Julius also asserts that Shirley is not entitled to an arrearage of child support, since Ursula left the home three years earlier, and was not relying on Shirley for support. Julius asserts that repayment of such an arrearage would unjustly enrich Shirley, since she did not support Ursula during that period of time.
Varner discusses the principles surrounding judicial forgiveness of child support payments. Id. at 434 (Miss. 1991). Varner concerned a case where this Court approved an extra-judicial agreement reducing child support, with proof that the husband paid child support to those children. Varner, 588 So.2d at 436.
Here, in contrast, there is no information demonstrating that Julius was paying child support to Ursula for the period from 1989, when she allegedly left Shirley's household, to 1992, when Shirley filed her motion for contempt. Second, this Court noted in Varner that parents have seven years to collect past due child support, and that such awards are made to the custodial parent who has a fiduciary duty to hold for the use of the child. Id. at 432, citing Miss. Code Ann. § 15-1-43 (1972).
This Court has held that a parent's receipt of child support when the child is self-sufficient was "unjust enrichment." Manning v. Tanner, 594 So.2d 1164, 1168 (Miss. 1992). However, the Manning Court reversed a court-ordered overpayment of child support. Manning, 594 So.2d at 1168. In contrast, Julius reduced payments on his own. A unilateral reduction in child support by the paying spouse is a violation of our law. As a result, Julius lacks clean hands under our equity law, which precludes Julius' raising issues of equity himself. See Brennan v. Brennan, 605 So.2d 749, 752-53 (Miss. 1992).
No judicial finding exists that Ursula was indeed emancipated in 1989. Julius testified that he acted on the advice of his attorney to stop support for Ursula. Ursula did reach majority on July 12, 1990. This event occurred seventeen months after she allegedly left Shirley's household. Ursula's majority occurred twenty months before Shirley filed her motion for contempt. As a result, this Court concludes that the chancellor implicitly found that Ursula was not emancipated through his award. Where a chancellor fails to make a written determination, this Court presumes all factual findings were made in the appellee's favor. Love, 611 So.2d at 207.
However, even after noting Ursula's majority, where a court awards a level of child support for multiple children, one child's leaving does not automatically reduce the level of child support. Manning, 594 So.2d at 1168. The chancellor was well within his authority to set a new level of child support which was higher than one-half of the prior child support. However, absent a contract between the parties for post-majority obligations, or similar exigent circumstances, a child's reaching the age of 21 years is sufficient to automatically terminate support without court order.
In summary, this case required a judicial decree determining emancipation of Ursula, if any, prior to her majority. This Court currently requires such a decree in modification of child support payments. To do otherwise in equity, for this case alone, would lead to instability in the law.
However, this Court does note our reaffirmance of not allowing any unjust enrichment going to the mother, as opposed to Ursula herself. This Court remands this case to the chancellor for a determination of the date of Ursula's emancipation. The Court can then determine an appropriate award of delinquent child support based on its finding with entry of an appropriate order for arrearage based on those facts. The award of $280 child support for the remaining child after Ursula's emancipation is affirmed.
JUDGMENT IS AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
*31 HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
DAN M. LEE, P.J., specially concurs with separate written opinion joined in part by SMITH, J.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SMITH, J.
DAN M. LEE, Presiding Justice, specially concurring:
I concur with the majority's decision to remand this case to the lower court to determine Ursula's date of emancipation. Likewise, I agree with the majority's contention that whether Ursula was emancipated before her twenty-first birthday is a question of fact. I write here to clarify points brought out in the majority opinion.
As Oliver Wendell Holmes once stated: "This is not a matter for polite presumptions; we must look facts in the face." Frank v. Mangum, 237 U.S. 309, 347, 35 S.Ct. 582, 595, 59 L.Ed. 969 (1915). Here, when we "look the facts in the face," we find that Ursula moved out of her mother's home towards the end of February 1989, and did not return to her mother's home thereafter. It is also undisputed that Ursula turned twenty-one years old on July 12, 1990. Likewise, it is undisputed that this suit to recover child support payments due Ursula was brought by Shirley in March of 1992, without joining Ursula and after Ursula turned twenty-one years of age.
If the lower court determines on remand that Ursula was emancipated in February of 1989, then Julius owes nothing for Ursula's child support. However, if the chancellor determines that Ursula was not emancipated or that some money is due her, that money does not legally belong to Shirley but instead belongs to Ursula. In Harrell v. Duncan, 593 So.2d 1, 6 (Miss. 1991), this Court stated:
Child support is awarded to the custodial parent for the benefit and protection of the child. Child support benefits belong to the child, and not the parent who, having custody, receives such benefits under a fiduciary duty to hold and use them for the benefit of the child. (emphasis added).
Harrell, 593 So.2d at 6, quoting Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss. 1990). See also Varner v. Varner, 588 So.2d 428 (Miss. 1991); Smith v. Smith, 585 So.2d 750, 752 (Miss. 1991); Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss. 1991); Lawrence v. Lawrence, 574 So.2d 1376, 1381 (Miss. 1991).
In the case sub judice, the proof shows that Ursula did not live with her mother during the time for which Shirley seeks to obtain back child support payments. Likewise, Shirley did not prove that she had incurred any expenses to support Ursula after Ursula had left home. A fortiori, Shirley cannot argue that she should be allowed to bring this suit against Julius so that she might collect monies that she spent to support Ursula. The record is simply devoid of any proof that Shirley supported Ursula in any way after Ursula left Shirley's home. Any money paid to Shirley under the state of this record would constitute unjust enrichment. See Manning v. Tanner, 594 So.2d 1164, 1168 (Miss. 1992).
Ursula was twenty-one at the time Shirley brought this suit seeking back child support payments from Julius and therefore, Ursula was the proper party and a necessary party to bring this action on her behalf. In Setser v. Piazza, 644 So.2d 1211, 1217 (Miss. 1994), this Court stated:
Emancipation of a child has been defined by this Court as freeing the child `from the care, custody, control, and services of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it.' Caldwell v. Caldwell, 579 So.2d 543, 549 (Miss. 1991). A party is not responsible for the support of a child once the child is emancipated, either by reaching majority age or otherwise.
In Crow v. Crow, 622 So.2d 1226, 1230 (Miss. 1993), this Court stated: "A parent is relieved of the legal duty to support his child once the child is emancipated whether by attaining the age of majority or otherwise." We then recognized that "[t]wenty-one (21) *32 years is the age of majority in this State for purposes of child care and maintenance orders issued pursuant to Miss. Code Ann. §§ 93-5-23 and 93-11-65." Id.
By the time Shirley brought this suit, Ursula, had reached the age of twenty-one and was clearly emancipated. Consequently, under the facts of this case, Ursula was the only party who could sue her father to collect back child support payments owed her.
On remand, the chancellor may determine what, if any arrearages Julius owes Shirley for the support of their son. However, unless Shirley can prove that she expended money on Ursula after she left home, the chancellor should not award any money to Shirley for Ursula's pre-emancipation support. To do otherwise would allow for unjust enrichment.
Litigants in chancery proceedings should be mindful of the rules on joinder of necessary parties. See Miss.R.Civ. P. 19; Shows v. Watkins, 485 So.2d 288, 290 (Miss. 1986). Our legal system works best only when all concerned and necessary parties are before the court so that a just and correct result may be reached. Unfortunately, in the case sub judice, we cannot say that this requirement was met at the first hearing.
SMITH, J., joins this opinion in part.
McRAE, Justice, dissenting:
The majority correctly finds that Rule 53 allows a chancellor to reexamine questions of law regardless of whether the parties stipulated the master's finding of facts. M.R.C.P. 53(g)(3). However, in light of our recent decision in Trovato v. Trovato, 649 So.2d 815 (Miss. 1995), further review and analysis of the procedural facts of the case is needed to determine whether Rembert may have waived her right to object to the master's report. Although Williams expressly raised the issue in his appeal, the majority has simply glossed over it. Accordingly, I dissent.
Rules 53(g)(1) and (2) set forth specific requirements for the filing, acceptance and objections to the master's report. Rule 53(g)(1) provides that the master shall file the report with the clerk of the court and, unless otherwise directed by the order or reference, shall file it with a transcript of the proceeding and of the evidence in the original exhibits. The clerk shall forthwith mail to all parties notice of the filing.
Rule 53(g)(2) specifies the procedure for objecting to the master's report:
Within ten days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon report and upon objections thereto shall be by motion and upon notice as provided by Rule 6(d).
The master's report was rendered September 19, 1992. It concluded with the statement that:
In conclusion the Hon. Gary Honea is directed to draft an order in conformity with this report, furnishing a copy to the Hon. John H. White, prior to presenting it to me for my signature and subsequently to Chancellor Reeves.
The record is silent as to whether either the master's report or the order that Rembert's attorney, Honea, was directed to draft were filed with the clerk of courts as required by Rule 53(g)(1). Honea, therefore, upon receipt of the master's report, had notice of the report and its contents. Honea, by his affidavit, admitted that he prepared the judgment in the case based on the master's findings and decisions. Nevertheless, there is no indication in the record that Honea made any effort on his client's behalf to comply with the requirements of Rule 53(g)(2) by serving written objections to those findings and decisions within ten days of the September 19 date or of September 30, 1992, when the final letter opinion was issued. Thus, her failure to comply with Rule 53(g) serves as a waiver of any objections Rembert might have had to the master's report.
The chancellor entered an order on October 16, 1992, adopting the master's report. It was only on October 26, 1992, ten days after the chancellor's October 16th opinion, that Rembert raised her objections, filing a Motion to Correct the Judgment and a Motion to Reconsider the Family Master Ruling. *33 Such a delinquent objection and notice thereof further fails to meet the requirements of Rule 53(g)(2).
It further should be noted that although the chancellor referred the case to a master, the record does not include the order appointing him or make reference to the circumstances requiring the appointment of a master. As noted in Trovato, 649 So.2d at 816, and in Massey v. Massey, 475 So.2d 802, 806 (Miss. 1985), when selecting a master, the provisions of Rule 53 must be followed with great specificity.[1] Thus, we are left wondering whether the matter was properly before the family master.
Finally, I share in Justice Lee's concerns about whether Rembert had standing to collect back child support due on behalf of her emancipated daughter, Ursula. As Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss. 1990) and its progeny have held, "[c]hild support benefits belong to the child, and not the parent ..." Harrell v. Duncan, 593 So.2d 1, 6 (Miss. 1991). See also Varner v. Varner, 588 So.2d 428 (Miss. 1991).
In Massey, we cautioned the "attorneys, litigants and trial judges of this state to utilize Rule 53 in the future with great care." 475 So.2d at 806. In this case, the party now seeking relief failed to comply with Rule 53. Her objections to the master's report, therefore, should be deemed waived. Accordingly, I dissent.
DAN M. LEE, P.J., and SMITH, J., join this opinion.
NOTES
[1] See Trovato v. Trovato, 649 So.2d 815 (Miss. 1995), for pertinent statute governing use of Family Masters under Miss.Code Annotated § 9-5-255 (Laws of 1994) and Special Masters under M.R.C.P. 53.
[2] Although standing of the mother to bring this lawsuit is a matter of law, the question of emancipation in this case would determine the standing problem. The question of emancipation for Ursula, since she was a minor when she left the household, is one for the finder of fact. The reason for this requirement is that with notable exceptions, the question of whether a child has freed himself from the custody of his parents is a matter of fact, for determination by the finder of fact. See Pass v. Pass, 238 Miss. 449, 454, 118 So.2d 769, 771 (1960) (determining that emancipation can be a question of circumstances). The question of standing, a matter of law, depends on the question of emancipation, here a matter of fact. The chancellor here implicitly found Ursula was not emancipated through his award of child custody. Where the chancellor makes no specific findings, this Court presumes that the chancellor resolved all fact questions in the appellee's favor. Love v. Barnett, 611 So.2d 205, 207 (Miss. 1992).

Therefore, it is clear the chancellor found that Ursula was not emancipated. As such, Shirley still had custody, and standing to bring her suit.
Secondly, there is still one unemancipated child in Shirley's household to which Williams owes child support, and for whom the mother, as custodial parent, has standing to bring this lawsuit. Varner v. Varner, 588 So.2d 428, 432 (Miss. 1991). Shirley definitely had the standing to determine what her child support should be for the one remaining child, instead of merely accepting Julius' unilateral reduction. There is no standing problem in this case.
[1] Pursuant to Miss. Code Ann. Sec. 9-5-255(1) (Supp. 1994), effective after the date Laws, 1994, ch. 564, sec. 75, as effectuated under Section 5 of the Voting Rights Act of 1965, family masters are to be appointed only when the Chief Justice of the Supreme Court determines that the need exists.