# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00774-SCT

*DEPARTMENT OF HUMAN SERVICES, STATE OF MISSISSIPPI*

*v.*

*MELVIN L. FILLINGANE, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/1998 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL BY: STEPHEN C. CHAYER |
| ATTORNEY FOR APPELLEE: | HERBERT H. KLEIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART- 06/15/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/6/2000 |

**BEFORE PRATHER, C.J., MILLS AND COBB, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE FACTS AND CASE

¶1. On January 9, 1987, Melvin and Shirley Fillingane were granted a divorce on grounds of irreconcilable differences in the Chancery Court of Forrest County, following twelve years of marriage. The divorce decree incorporated a Child Custody, Support and Visitation Agreement which provided that Shirley would have primary custody of the couples' three daughters and which required Melvin to pay Shirley six hundred dollars per month in child support. The couple's three daughters are Shannon, who was born in 1977; Lisa, born in 1980; and Kimberly, who was born in 1983.

¶2. Shirley and her children later moved to Ohio, and on October 23, 1991, she filed a Uniform Enforcement of Support Act (URESA) motion with the Juvenile Court of Butler County Ohio, seeking past due child support from Melvin. Following certification of the URESA motion by the Ohio court, Shirley filed the motion with the Chancery Court of Forrest County, Mississippi on June 2, 1994, seeking an enforcement of the action against Melvin, who was then living in Hattiesburg.

¶3. On July 24, 1995, the Forrest County Chancellor entered an order directing that Melvin "re-direct" his child support payments to the Forrest County Department of Human Services ("DHS"), which payments

were to be forwarded by DHS to the Butler County, Ohio Child Support Enforcement Agency. On August 30, 1995, the Chancellor issued an Order of Withholding, directing that the $600/month in child support provided for in the 1987 Divorce Decree be withheld from Melvin's salary, and directing that an additional $60/month be withheld until any child support arrearage was paid.

¶4. On September 7, 1995, Melvin filed a "Petition for Modification of Child Support, Entry of Order Nunc Pro Tunc and for Contempt" asserting that his child support payments should be reduced due his oldest daughter Shannon's having become emancipated. On May 7, 1997, the Chancellor issued an order setting temporary child support at $200 per month.

¶5. The Chancellor's May, 1997 order reserved ruling on certain issues, and on October 15, 1998, the Chancellor issued a Final Judgment finding that Lisa had become emancipated upon her marriage on October 25, 1996 and finding that Shannon had become emancipated upon the birth of her child on June 6, 1996. The Chancellor's judgment accordingly provided for child support for the benefit of Kimberly only, and the Chancellor set these payments at $200/month with an additional $300/month payable towards the arrearage until twenty months from October 1, 1998 or until the arrearage was paid in full.

¶6. The Chancellor reduced the arrearage due and payable of $12,455 to $6,000, subtracting $3,685 to reflect the emancipation of Lisa and Shannon and subtracting $2,770 to reflect direct payments made by Melvin to his ex-spouse and daughters. On October 23, 1998, the DHS filed a motion to reconsider, arguing that the Chancellor had improperly forgiven a vested child support arrearage and that he had deviated from the child support guidelines without providing written findings in support thereof. On November 20, 1998, the DHS initiated an encumbrance and seizure of Melvin's bank account pursuant to Miss. Code Ann. § 43-19-48(3), seeking to collect on funds owed by Melvin above and beyond those provided in the Chancellor's judgment. On December 2, 1998, Melvin filed a Motion to Clarify Final Judgment, arguing that the monthly payment schedule set forth by the Chancellor was the sole means by which the DHS could collect the arrearage.

¶7. On December 18, 1998, the Chancellor issued an Order Clarifying Final Judgment, ruling that the DHS's sole means of collecting on Melvin's arrearage was through the $300/month payments provided for in the Chancellor's earlier ruling. The Chancellor accordingly voided the DHS's encumbrance and seizure of the funds in Melvin's bank account. The Chancellor overruled DHS's motions to reconsider this ruling and, feeling aggrieved, DHS has appealed to this Court.

<u>ISSUES</u>

**I. Is a downward modification of vested child support judgment allowable under Mississippi law if the order at issue is not a per child order and a child is emancipated by order of the Court?**

¶8. The present appeal requires this Court to consider, once again, the issue of whether the emancipation of one or more of multiple children being supported by a child support decree entitles a parent or Chancellor to retroactively reduce child support payments for the remaining children. It is well settled that a parent is relieved of the legal duty to support their child once the child is emancipated, by attaining the age of majority or otherwise. *Nichols v. Tedder*, 547 So.2d 766, 770 (Miss.1989). The issue of whether a child has freed himself from the custody of his parents is one of fact, for determination by the finder of fact. *Pass v. Pass*, 238 Miss. 449, 454, 118 So.2d 769, 771 (1960). *See also*:*Rennie v. Rennie*, 718 So.2d

1091, 1094 (Miss. 1998)(holding that child was emancipated where she "set up house and had a child.").

¶9. DHS notes that, in ***Williams v. Rembert,*** 654 So.2d 26 (Miss. 1995), this Court addressed this-issue, in a factual context similar to that in the present case. In ***Williams***, the Chancellor initially forgave a portion of a child support arrearage where the record indicated that the father had unilaterally reduced his child support payments upon the emancipation of one of his children. ***Williams***, 654 So.2d at 27. The Chancellor reconsidered his original ruling, however, based upon this Court's consistent holdings precluding the retroactive reduction of vested child support obligations. *See, e.g.* ***Thurman v. Thurman***, 559 So.2d 1014, 1016-17 (Miss.1990); ***Brand v. Brand***, 482 So.2d 236, 237 (Miss.1986); ***Hailey v. Holden***, 457 So.2d 947, 951 (Miss.1984).

¶10. This Court in ***Williams*** affirmed the Chancellor's second ruling, based largely upon our prior holding in ***Moore v. Moore***, 372 So.2d 270, 271-72 (Miss. 1979). In ***Moore***, this Court disallowed a retroactive reduction in child support obligations based upon the emancipation of one of multiple children being supported by a child support decree. This Court in ***Moore*** based its holding on those of other jurisdictions, and the Court cited the following factors in support of the holding:

> First, the allowance was $75 per week for the family group and did not provide for an allowance of $15 per week for each child. Perhaps the judgment contemplated that a base amount would be required regardless of the number of children with an undetermined amount for each child being included in the $75 weekly allowance.

> Second, a child support order is not based solely on the needs of the minor children, but takes into account the ability of a parent to pay child support. Consequently, a child support order may not accurately reflect the amount actually required for the support of children, but may reflect only the amount a parent can afford to pay. Allowing an automatic reduction of an undivided order would ignore the realities of such a situation.

> Third, considering an undivided child support order as equally divisible among the children overlooks the possibility that the requirements of the individual children may very widely, depending on the circumstances of each child.

***Id.***, (citing ***Eaglin v. Eaglin***, 306 So.2d 375 (La.App.1974); ***Guthrie v. Guthrie***, 429 S.W.2d 32 (Ky.1968); ***Delevett v. Delevett***, 156 Conn. 1, 238 A.2d 402, 405 (1968); ***Taylor v. Taylor***, 147 Colo. 140, 362 P.2d 1027 (1961)).

¶11. In at least two other cases, however, this Court has granted chancellors greater latitude to retroactively modify based on the emancipation of a child. In ***Nichols v. Tedder***, 547 So.2d 766, 781 (Miss. 1989), an obligor father was allowed a credit for child support paid subsequent to one child reaching the age of 21 and subsequent to another child moving into his home. This Court held these facts did not *automatically* grant the obligor father the right to receive a credit for child support payments made after emancipation, but we indicated that "under proper circumstances, the father should be allowed the opportunity to prove before a trial judge that he should receive such a credit."

¶12. This Court's very recent decision in ***[Sumrall v. Munguai](#)***, No. 1998-CA-01652-SCT, 2000 WL 375557, (Miss. April 13, 2000). provides additional support for Melvin's position in the present case. In ***[Sumrall](#)***, an obligor father (Sumrall) sought a retroactive modification of his child support arrearage to

reflect the prior emancipation of his son. *Sumrall*, slip op. at 4. Citing *Nichols*, this Court held that the Chancellor had abused his discretion in refusing to grant the obligor father a credit for excess child support payments made following the son's emancipation.

¶13. It appears that there is, to some extent, a conflict between this Court's decisions in *Sumrall* and *Nichols* and this Court's decisions in *Williams* and *Moore*. Nevertheless, this Court re-affirms our holding in *Nichols* and *Sumrall*. We conclude that a Chancellor should have the discretion to grant an obligor parent a credit for child support payments which were made on behalf of a child subsequent to that child's emancipation. It would be unwise to unduly restrict a Chancellor's ability to make an equitable ruling in this regard, and we conclude that the Chancellor did not abuse his discretion in granting Melvin a credit to reflect the prior emancipation of two of his daughters. This point of error is without merit.

> **II. May an encumbrance and seizure initiated pursuant to Miss. Code Ann. § 43-19-48-(3) (1972, as amended) be set aside as void because the monthly payments ordered by the Final Judgment dated September 18, 1998 is the sole means by which the Plaintiff can collect the arrearage?**
>
> **III. Can the Chancellor deviate from the guidelines without making written findings of fact on the record?**

¶14. Although the Chancellor did not abuse his discretion in modifying Melvin's child support obligations, the question nevertheless arises as to whether the Chancellor properly determined the child support for the remaining child, Kimberly. DHS correctly notes that the Chancellor's award of $200/month in child support was substantially below the statutory guidelines, and the Chancellor made no written findings of fact in support of his ruling, contrary to the express requirements of law. See: Miss. Code Ann. § 43-19-101(2); *Knutson v. Knutson*, 704 So.2d 1331 (Miss. 1997).

¶15. Given that the original child support award was in the amount of six hundred dollars, it appears that the Chancellor merely divided this original award by three to reflect the emancipation of two of the children. This $ 200/month award is contrary to the statutory guidelines, however, and given that the Chancellor made no findings of fact in support of this award, we must reverse and remand for a new determination in this regard. This Court concludes that, on remand, the Chancellor should either follow the statutory guidelines or justify his failure to do so with written findings of fact, as required by law.

¶16. In addition, the Chancellor should determine the proper amount of Melvin's child support arrearage in the present case, based in part upon his findings as to the proper amount of Kimberly's child support.

¶17. It should be stressed that, once Melvin's child support arrearage is properly calculated, DHS has the full statutory right to collect on this arrearage by "normal collection processes." *Walters v. Walters*, 383 So.2d 827, 829 (Miss. 1980). This Court has repeatedly held that the "fact that a delinquency is in the process of being corrected through a `payment plan' does not alter the existence of the underlying delinquency until such time as it is paid." *Dept. of Human Servs. v. St. Peter*, 708 So.2d 83, 85 (Miss. 1998); *Brown v. Gillespie*, 465 So.2d 1046 (Miss.1985), *Brand v. Brand*, 482 So.2d 236 (Miss.1986). The Chancellor erred in voiding DHS's encumbrance and seizure of Melvin's bank account, and this Court holds once again that DHS has a right and an obligation to collect past due child support by "normal collection processes."

¶18. For these reasons, the judgment of the Forrest County Chancery Court is reversed to the extent that (1) it reduced Melvin's monthly child support obligation to $ 200 per month and (2) voided DHS's encumbrance and seizure of Melvin's bank account. This case is remanded to that court for a redetermination of Melvin's monthly child support obligation and child support arrearage with supporting findings and conclusions. In all other respects, the judgment below is affirmed.

¶19. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN AND BANKS, P.JJ., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**