GUTHRIE, et ux. *v.* GUTHRIE, et ux.

No. 39837          December 19, 1955          84 So. 2d 158

*E. C. Fishel,* Hattiesburg; *H. D. Young,* New Augusta, for appellant.

192

*Melvin, Melvin & Melvin,* Laurel, for appellees.

LEE, J.

This lawsuit presents a controversy between father and son over 160 acres of land. On March 20, 1950, J. W. Guthrie and wife, 77 and 73 years of age, respectively, filed their bill of complaint against G. B. Guthrie and wife, in which it was alleged that J. W., on January

27, 1932, contracted to purchase the land in question for $160 and its redemption from a 1930 tax sale and the payment of the taxes for 1931; that the deed was executed to him on June 13, 1934; that G. B., the son, advanced $95 for payment on the purchase price; that the complainants opened 56 acres to cultivation, erected a building thereon, developed a tung orchard, and made extensive improvements; that in 1940, G. B. began to lay claim to the land by reason of his furnishing a part of the purchase price; that, since he was their son, they permitted him to build a home on 40 acres, and he cleared some of the land and put it in cultivation; that in order to preserve peace between them, they offered to make him a will, or deed him a part of the land; that he rejected their offers, and had obstructed them in the free use of the land; and that they were compelled, for that reason, to institute the suit. They offered to do equity and pay their son for all of his advances and improvements, or deed him the 40 acres on which his home was located. The prayer of the bill was for the cancellation of his purported claims.

The defendants answered and denied the material allegations of the bill. They made their answer a cross bill and alleged that J. W., in the purchase of the land, was acting for the defendants, who paid the purchase price and erected all improvements. They averred that they were willing for the complainants, because they were father and mother, to live on the land. The prayer of the cross bill was for the adjudication that J. W. was holding title to the land in trust for G. B. and that G. B. should be vested with the legal title.

The answer to the cross bill denied the material allegations thereof and set up a further plea of the statute of limitations.

In the course of the trial, at the suggestion of the chancellor, the parties represented that they had settled their controversy. On July 5, 1951, a decree was

entered in accordance with the announcement, namely, that J. W. and wife would execute to G. B. a warranty deed to the land and reserve unto themselves "a life estate with the exclusive use and occupancy of the above described land with the right to the income from leases and rents of the tenant property on said land, and also to the right to lease the oil, gas and mineral rights of said property for a period of not longer than ten years at any one time. It is further understood and agreed that G. B. Guthrie, and wife, Florence Guthrie, are to vacate the place that they now occupy and to remove all personal effects, including farming tools, and equipment, and growing crops, and all livestock, on or before October 1, 1951".

On the same date, July 5, 1951, the deed was executed. It did not make any reference to the second provision, contained in the above-quoted excerpt from the decree.

Two months later G. B. and wife filed a petition against J. W. and wife, alleging that the defendants were cutting timber on the land, and obtained a temporary injunction thereon.

On August 25, 1952, J. W. and wife filed a sworn petition in which they charged that the original decree and the deed executed pursuant thereto were erroneous to wit: "That at the time of the execution of said deed this cause was being heard by the court on July 5, 1951, and after all the testimony by complainants and defendants was heard, at the suggestion of the court, said complainants and defendants herein retired to attempt a settlement and compromise of said cause; that the minds of the parties never met and said decree so entered and the deed pursuant thereto, are erroneous in that it was agreed that the complainants had the right to cut the timber on the land as described in the exhibits and the attorneys for complainants and defendants so understood same, and either through a mutual mistake or the fraud on part of the defendants, the right to cut

said timber was omitted from said decree; that these said complainants after the said decree had been drafted, had explained to them that this gave to them the right to cut the timber, as well as the other rights shown in said decree, but by mutual mistake or misunderstanding or the fraud of the said defendants, the rights of the petitioners to cut growing timber on said lands was omitted from said decree. It was further explained in the execution of said decree and said deed that G. B. Guthrie would not interfere concerning anything about the land or the cutting of the timber."

They also charged that the rights conveyed by the decree: "was a fraud on the rights of your petitioners, were unconscionable and inequitable." It was further charged that the sole purpose of settling the case "was to enable them to cut some timber to obtain money for necessities of life and to use on said premises, and to end a long period of worry, trouble and interference caused" by G. B. and wife; and that the consideration for the decree and deed had wholly failed, because G. B. and wife violated the provisions of the decree by tearing down fences, burning a barn, locking up the crib with the water pump therein, failing to move their property, and in other particulars. They alleged that the decree and warranty deed should be vacated and set aside as fraudulent, and prayed for reformation so as to expressly reserve to them, during their lifetime, the right to cut and remove any and all timber. Answer was also made to the injunction suit.

To this bill of J. W. and wife for reformation, G. B. and wife filed a demurrer, assigning seventeen grounds, among which were included that there was no equity and that the allegations were insufficient to show that they were entitled to any relief. Both sides filed other pleadings, but it is unnecessary to refer to them.

Subsequently, on June 3, 1953, the chancellor sustained the demurrer, and granted thirty days in which

to amend. On motion, additional time was granted for this purpose, but the bill was never amended. The chancellor then consolidated this with the injunction proceeding, and the bill for reformation was finally dismissed. J. W. and wife have appealed.

The question for decision is whether or not the court erred in sustaining the demurrer.

■■ ■ In the bill for reformation, it was, in effect, alleged that (1) it was agreed that the complainants had the right to cut the timber; (2) the attorneys for the complainants and the defendants so understood the agreement; (3) after the decree had been drafted, it was explained to the complainants that they had the right to cut the timber; (4) the right to cut the timber was omitted from the decree; (5) the omission occurred because of misunderstanding, or mutual mistake, or the fraud of defendants; and (6) such omission was a fraud on the rights of complainants and was inequitable and unconscionable.

The demurrer of course admitted the truthfulness of those allegations. Assuming such allegations to be true, do they entitle the complainants to a hearing on the merits?

A consent decree "is binding on the consenting parties; it cannot be reviewed except on a showing that consent was obtained by fraud or that the decree was based on mutual error. * * is * * as conclusive upon the parties as is a decree which has been rendered after a hearing on the merits." 19 Am. Jur., Equity, Section 407, p. 280. It is "in the nature of a contract, sanctioned by the court, as to what the decision should be." 30 C. J. S., Equity, Section 678, p. 1126. It "may be vacated for matters going to the fact of consent, such as fraud, or accident or mistake, in its procurement, either one of which grounds, or both, may include nonconformity of the decree to the agreement of consent, or the unauthorized consent of an attorney. * * * Where relief

is sought upon grounds going to the fact of consent to the decree as entered, the proper remedy is by original bill in the nature of a bill of review * * *''. Section 682, pp. 1130-31 of above volume. ''As in the case of judgments generally, a court has power to open, set aside, vacate, amend, or modify a consent judgment or decree upon a showing of mistake, fraud, absence of consent, or similar ground common to any judgment.'' 31 Am. Jur., 1954 Cumulative Supplement, Judgments, Section 715.1, p. 30.

A consent decree ''cannot be set aside or reviewed, except on a clear showing that it was obtained by fraud, or the substantial equivalent thereof, or was based on mutual mistake.'' Griffith's Miss. Chancery Practice, 2d Ed., Section 618, p. 664. Of course the charge must be specifically stated with full definiteness of detail. Section 176, p. 162 thereof. The jurisdiction and power of a court of equity to relief against fraud or its equivalent is available where these dominant requirements exist:'' (1) that the facts constituting the fraud, accident, mistake or surprise must have been the controlling factors in the effectuation of the original decree, without which the decree would not have been made as it was made; (2) the facts justifying the relief must be clearly and positively alleged as facts and must be clearly and convincingly proved; (3) the facts must not have been known to the injured party at the time of the original decree, and (4) the ignorance thereof at the time must not have been the result of the want of reasonable care and diligence * * *''. Section 642, p. 706 of the above authority.

While the allegations were insufficient to sustain a charge of fraud, they did afford a sufficient basis for relief on a charge of mutual mistake or failure of consent.

It therefore follows that the learned chancellor was in error in sustaining the demurrer, and the cause is reversed and remanded.

Reversed and remanded.

*Roberds,* P. J., and *Holmes, Arrington* and *Ethridge,* JJ., concur.