CARLTON, J.,
for the Court:
¶ 1. This case is a consolidated appeal of the final judgments entered by the Warren County Chancery Court on July 6, 2010, and September 28, 2010. On appeal, Charles P. Rogers Jr. submits the following issues for review: (1) whether the *1261 chancellor erred in finding that Charles perpetrated a fraud upon the court; (2) whether the doctrine of res judicata applies to the present matter; (8) whether the chancellor’s July 6, 2010 final judgment was against the overwhelming weight of the evidence; (4) whether Julianne C. Rogers was entitled to a judgment against Charles for alimony for the months of April 1, 2009, through August 1, 2010, in the amount of $10,200 plus interest; and (5) whether Julianne was entitled to attorney’s fees for bringing her motion for relief from judgment.
FACTS
¶2. Charles and Julianne married on August 9, 1997, in Vicksburg, Mississippi. The marriage produced no children. On October 28, 2008, Charles filed for divorce from Julianne on the grounds of adultery, habitual cruel and inhuman treatment, and addiction to drugs and alcohol or, in the alternative, irreconcilable differences. On January 22, 2009, alleging that she was totally disabled, Julianne filed her answer and counterclaim seeking to require Charles to provide her with permanent separate maintenance and medical insurance.
¶ 8. After a trial held on January 23, 2009, the chancellor entered a final judgment on March 18, 2009, granting Charles a divorce on the ground of habitual cruel and inhuman treatment. The chancellor awarded Charles the exclusive use, possession, and ownership of the marital home of the parties, and ordered him to pay Julianne $16,000 as her equity in the home. The chancellor also awarded Julianne $32,000 from Charles’s retirement account, and awarded Charles the ownership of the remainder of his retirement account with directions to pay the outstanding loan against his account. The chancellor further ordered Charles to pay Julianne $400 per month in rehabilitative alimony for thirty-six months and to provide Julianne with medical insurance coverage through his employer during that thirty-six-month period. The chancellor also ordered Charles to pay the balance of Julianne’s medical bills as listed on Charles’s financial statement under the liabilities section.
¶ 4. On November 3, 2009, Julianne filed a motion for citation of contempt, asserting that Charles had not paid the $16,000 in home equity, the medical insurance, or the outstanding medical expenses, per the March 18, 2009 judgment. Charles denied Julianne’s assertions, claiming that he had complied with the chancellor’s orders regarding the medical insurance and payment of medical expenses. He further claimed that a reasonable amount of time had not expired for paying the home equity.
¶ 5. After a hearing on the motion for contempt, the chancellor entered a final judgment on February 22, 2010, finding Charles in contempt of court for failure to comply with the provisions of the previous judgment. The chancellor ordered Charles to pay the outstanding amounts owed from the March 18, 2009 judgment, as well as $2,500 in attorney’s fees. The chancellor specified that Charles must pay Julianne the $16,000 equity payment on or before June 18, 2010; pay the balance owed on the medical expenses immediately; and also provide medical insurance coverage immediately.
¶ 6. On March 1, 2010, Julianne filed a motion to amend the final judgment, requesting the chancellor to order Charles to pay the $16,000 equity payment, medical expenses, and attorney’s fees within thirty days from the entry of the amended final judgment. Julianne also requested that the chancellor charge Charles interest for at least one year of the time that he failed to pay the equity amount to Julianne.
¶ 7. On March 3,2010, Julianne also filed a Mississippi Rule of Civil Procedure 60(b) *1262 motion for relief from the original divorce judgment, requesting the[1] chancellor vacate and revise the final divorce degree regarding alimony awarded. Julianne claimed that Charles misrepresented the amount of his actual adjusted gross income stated in his Uniform Chancery Court Rule 8.05 financial statement. Although Charles’s Rule 8.05 statement reflects his bimonthly[1] wages, Charles testified that his adjusted gross income listed in the Rule 8.05 statement constituted his bimonthly income, as opposed to his monthly income.
¶ 8. On July 6, 2010, the chancellor entered a final judgment finding that Charles’s income misrepresentations in his Rule 8.05 statement constituted fraud upon the court. The chancellor increased the alimony award accordingly, ordering Charles to pay Julianne $1,000 per month for thirty-six months as rehabilitative alimony. The chancellor also ordered Charles to pay Julianne the uncovered medical expenses she incurred during the initial twelve-month period before full insurance coverage could be obtained. Charles filed a motion for rehearing specifically disputing the chancellor’s finding that Charles had perpetrated a fraud upon the court. Charles also disputed the chancellor’s finding that res judicata was not applicable to the matter of alimony. The chancellor denied the motion. On July 28, 2010, Charles filed this appeal.
¶ 9. On August 5, 2010, Julianne filed another motion for citation for contempt, asserting that Charles had failed to comply with the final judgment of divorce and the July 6, 2010 judgment. Julianne requested that the court award her the arrearage of alimony owed through August 1, 2010, in the amount of $10,200, plus medical expenses incurred that were not covered by insurance due to Charles’s refusal to provide medical insurance since the entry of the final judgment on May 19, 2009.
¶ 10. After a hearing on the motion for contempt, the chancellor entered a judgment on September 28, 2010, finding Charles in contempt of court for failure to provide adequate medical-insurance coverage. The judgment also ordered Charles to immediately reimburse Julianne for medical expenses and pay her $1,605 in attorney’s fees. The chancellor awarded Julianne a judgment against Charles of $10,200, plus interest (at eight percent per annum), in alimony for April 1, 2009, through August 1, 2010.
¶ 11. Charles now appeals the September 28, 2010 final judgment.
STANDARD OF REVIEW
¶ 12. This Court reviews judgments in domestic-relations cases under the “substantial evidence/manifest error” rule. Evans v. Evans, 994 So.2d 765, 768 (¶ 9) (Miss.2008). We will not disturb the chancellor’s findings unless those findings were manifestly wrong, clearly erroneous, or the chancellor applied an incorrect legal standard. Id.
DISCUSSION
I. Fraud
¶ 18. Charles argues that the chancellor erred in granting Julianne’s Rule 60(b) motion and finding that Charles perpetrated a fraud upon the court with regard to his Rule 8.05 financial statement. Charles claims that he testified at trial that his Rule 8.05 statement indicated a bimonthly net income, as a opposed to a monthly net income. Charles argues that Julianne failed to meet her burden of pre- *1263 senting clear and convincing evidence of any fraud perpetrated by Charles.
¶ 14. Julianne argues Charles failed to raise the argument in his motion for rehearing or reconsideration that his trial testimony corrected the alleged misrepresentation of income information in his Rule 8.05 statement. She claims, therefore, Charles should be procedurally barred from raising this argument for the first time on appeal. Julianne submits that Charles made no attempt to correct his false income information, nor did he file an amended Rule 8.05 statement with the chancery court.
¶ 15. In her March 3, 2010 Rule 60(b) motion, Julianne asked the chancellor to vacate and revise the final divorce decree with regard to the alimony award. Julianne claimed that Charles’s actual adjusted gross income greatly exceeded the amount represented in his Rule 8.05 statement. Julianne contended the misrepresentation “is proof of a gross misrepresentation and fraud” upon the court. She further claimed:
In [his Rule 8.05] financial statement, [Charles] represented to this court that his monthly adjusted gross income was only $4,651.71.
Based upon this information provided by [Charles], the court only awarded [Julianne] $400 per month for thirty-six (36) months beginning April 1, 2009, as rehabilitative alimony. This award of this amount of alimony was certainly influenced by the amount of income represented to this court to be received by [Charles] in his 8.05 form.
It was not until January 11, 2010, when [Charles] responded to discovery in connection with the motion for citation of contempt filed by [Julianne] in this matter on or about November 4, 2009, that [Julianne] learned of the gross misrepresentation made by [Charles] through the form 8.05.
¶ 16. After a hearing on the matter, the chancellor entered a final judgment on July 6, 2010, determining:
[Charles’s Rule 8.05] financial statement in the divorce action and the applicable testimony reflected that [Charles’s] monthly gross income was $4,651.71, his monthly deductions were $1,587.60[,] and his adjusted gross monthly income was $3,064.11.
In the divorce action, the court considered [Charles’s] net income pursuant to his check stub ... as $2,153.59 per pay period.
The following calculations were made:
[[Image here]]
$55,993.34
[[Image here]]
$4,666.11
The court relied on the $4,666.11 per month calculation as [Charles’s] income in calculating the award of alimony to [Julianne] in the divorce action.
The court finds that [Julianne] presented sufficient evidence to prove fraud by [Charles].
¶ 17. The chancellor determined that Charles’s actual monthly adjusted gross income amounted to $5,857.03, as opposed to $4,666.11 as stated in the previous judgment. The chancellor subsequently revised the final divorce decree, increasing Julianne’s alimony award to $1,000 per month in rehabilitative alimony for a thirty-six-month period.
¶ 18. The general rule is well settled that fraud will not be presumed but must be affirmatively proven. Taft v. Taft, 252 Miss. 204, 213, 172 So.2d 403, 407 (Miss.1965). The Mississippi Supreme Court has held that in order to establish fraud, the burden is on the proponent to prove the following elements:
*1264 (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker’s knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer’s ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.
Koury v. Ready, 911 So.2d 441, 445 (¶ 13) (Miss.2005) (citing Mabus v. St. James Episcopal Church, 884 So.2d 747, 762 (¶ 32) (Miss.2004)). Additionally, “fraud ... must be proved with clear and convincing evidence.” Hamilton v. McGill, 352 So.2d 825, 831 (Miss.1977). We have recognized that “[cjlear and convincing evidence is such a high standard that even the overwhelming weight of the evidence does not rise to the same level.” Moran v. Fairley, 919 So.2d 969, 975 (¶ 24) (Miss.Ct.App.2005) (citation omitted).
¶ 19. To vacate a decree due to fraud, the supreme court, in Manning v. Tanner, 594 So.2d 1164, 1167 (Miss.1992), listed the four necessary requirements that must be met:
(1) that the facts constituting the fraud, accident, mistake[,] or surprise must have been the controlling factors in the effectuation of the original decree, without which the decree would not have been made as it was made; (2) the facts justifying the relief must be clearly and positively alleged as facts and must be clearly and convincingly proved; (3) the facts must not have been known to the injured party at the time of the original decree, and (4) the ignorance thereof at the time must not have been the result of the want of reasonable care and diligence.
¶ 20. In turning to a review of the record before us, we also note that the trial transcript from the January 23, 2009 trial shows Charles was questioned during direct examination regarding his earnings as follows:
Q. I’m going to hand you now, [Charles], your [Rule] 8.05 [statement,] and we’re going to talk through it. What do you make down there?
A. I’m on a salary of $88,000 a year.
[[Image here]]
Q. What do you receive [as a salary from your employer at Entergy] on a monthly basis?
A. I have here gross monthly income $4,651.71....
[[Image here]]
Q. [Charles], I’m going to place in front of you what’s been marked as Plaintifff’s] Exhibit 7[,] which is a copy of your 8.05 financial statement. And I’m going to hand you another document now.... Can you identify this new document for the court, please?
A. This is a copy of my paycheck for the month of November.
Q. That’s the date that we discussed previously. It says, ending pay date November 22, 2008, and check date November 28, 2008. Is that right?
A. That’s correct.
[[Image here]]
Q. And that’s an accurate reflection of your income?
A. That’s correct.
[[Image here]]
Q. Now, this pay period. Is that a one week pay period or a two week pay period?
A. That’s a two week pay period.
¶ 21. Charles was also cross-examined by Julianne’s attorney regarding his 8.05 financial statement and salary:
*1265 Okay. I think your pay period was being described as bi-monthly. But they’re not bi-monthly are they? Like the 1st and the 15th? <©
No. It’s every two weeks. It’s every other week.
Every two weeks? ñ
That’s correct. ¡>
You get paid every two weeks, that means you have 52[,] divided by two, pay periods a year? fl
26 pay checks a year. í>
If you were paid the month or bi-month, you would have 48 pay periods a year? <©
I don’t think it was describe [sic] bimonthly.
I just heard that word and I just wanted to be sure that we were on the same page. Now, your paycheck it shows that every two weeks — and you said this is a typical paycheck? G?
That’s correct. t>
For 80 hours. That’s 40 hours a week? ■©
That’s correct.
¶ 22. Indeed, Charles s Rule 8.05 statement reflected a gross monthly income of only $4,651.71. However, at trial, Charles explained in his testimony, under oath, that his annual salary was $88,000 and that he received paychecks on a bimonthly basis. At trial, during his testimony, Charles clarified that his Rule 8.05 statement represented his bimonthly gross income, as he received a paycheck twice a month, not his monthly gross income.
¶ 28. Additionally, at the February 16, 2010 hearing on Julianne’s motion for contempt, Julianne’s attorney again questioned Charles about his Rule 8.05 statement in an attempt to elicit an admission from Charles that he had intentionally misrepresented his income to the court in the previous divorce trial. However, Charles refused to admit any intentional misrepresentation and instead explained that he had been heavily cross-examined during the divorce trial regarding the pay stub he submitted. Charles testified that he used the information provided on his pay stub to submit his financial information in the Rule 8.05 statement.
¶ 24. Julianne cites Trim v. Trim, 33 So.3d 471 (Miss.2010), in support of her argument that Charles’s inaccurate Rule 8.05 statement perpetrated a fraud upon the court. In Trim, George Trim submitted his Rule 8.05 statement listing the value of his company’s stock at $100,000. Id. at 473 (¶ 4). George and his ex-wife, Lisa, entered into a property-settlement agreement, which the chancellor later ratified, based on their assets and liabilities disclosed in their Rule 8.05 statements. Id. Lisa later discovered that George had misrepresented his stock value in his Rule 8.05 statement, and filed suit against him for fraudulent misrepresentation. Lisa’s expert valued George’s stock at $694,000 at the time of George and Lisa’s divorce. Id. at 474 (¶ 4). On appeal, the Trim court held that George’s intentional filing of a substantially false Rule 8.05 statement constitutes a fraud on the court, noting the chancellor’s finding that George’s Rule 8.05 statement drastically undervalued a major marital asset. Id. at 478 (¶ 17).
¶ 25. The case before us differs from Trim in that the record shows that Charles testified during trial and explained that his Rule 8.05 submission reflected a two-week pay period. In applying the standard for proving fraud to the facts and record before us, we cannot agree that Julianne met her burden of proving fraud by clear and convincing evidence. See Hamilton, 352 So.2d at 831. Although Charles’s Rule 8.05 statement incorrectly reflected his monthly salary, the record shows that he explained the discrepancy several times in his trial testimony. As a *1266 result, we find that the chancellor erred in considering Charles’s Rule 8.05 statement only, and not also his trial testimony, in determining that Charles’s misrepresentation of his income rose to the level of fraud. In her July 6, 2010 judgment, the chancellor erroneously found that Julianne proved by clear and convincing evidence that Charles perpetrated a fraud upon the court. Therefore, the chancellor erred in vacating the prior decree and revising the final divorce decree by increasing the alimony award. Accordingly, we reverse and set aside the revised final judgment and reinstate the original divorce decree. We also reverse and render the increased award of $1,000 in rehabilitative alimony for thirty-six months, which was based upon the erroneous finding of fraud on the court. Since the record does not support a finding of fraud by clear and convincing evidence, we reinstate the chancellor’s original divorce decree. See Manning, 594 So.2d at 1167; Shaeffer v. Shaeffer, 370 So.2d 240, 242 (Miss.1979).
II. Res Judicata
¶ 26. Charles next submits that since no fraud was perpetrated on the court, the doctrine of res judicata[2] applies. Charles claims that the issue of alimony had already been decided in the March 18, 2009 final judgment; therefore, the chancellor had no authority to increase the alimony award in the February 22, 2010 judgment. Charles further argues that Julianne is not entitled to an alimony award of $10,200, plus interest at a rate of eight percent, as her original alimony award was $400 per month for thirty-six months. Charles argues that Julianne failed to file a motion for the chancellor to reconsider the award after entry of the March 18, 2009 final judgment.
¶ 27. The record reflects that the chancellor’s judgment granted Charles a divorce based upon habitual cruel and inhuman treatment. The chancellor also divided the marital property and awarded Julianne rehabilitative alimony of $400 per month for thirty-six months. The judgement reflected that no lump-sum alimony was awarded; rather, the chancellor equitably divided the marital property and awarded temporary alimony.[3] Our supreme court has stated that no decree of alimony is ever truly a final judgment, as *1267 alimony is a continuing matter always subject to modification based upon a material change of circumstances. See Campbell v. Campbell, 357 So.2d 129, 130 (Miss.1978) (citations omitted). However, in this case, the chancellor based the revision of the final decree upon asserted fraud, not a material change in circumstances. See Taft, 252 Miss, at 213, 172 So.2d at 407. In Austin v. Austin, 981 So.2d 1000, 1005 (¶ 17) (Miss.Ct.App.2007), this Court held that the doctrine of res judicata did not bar the chancellor’s modification of an award of alimony where a material change in circumstances existed that was sufficient to justify a modification of a party’s financial obligations under the original divorce decree. Therefore, Charles’s claim that res judicata applies to the award of rehabilitative alimony in this case is misplaced. However, since we found that the modification in the present case was based on an unsupported claim of fraud, we reinstated the original decree of divorce after finding that the record failed to support the chancellor’s revision of the decree based on her finding of fraud. See generally Manning, 594 So.2d at 1167; Shaeffer, 370 So.2d at 242.
III. Attorney’s Fees
¶ 28. Charles submits that Julianne should not be awarded attorney’s fees for bringing her motion, as there was no fraud perpetrated on the court. Charles argues that the chancellor’s award of $1,605 in attorney’s fees to Julianne should be reversed.
¶ 29. Our jurisprudence generally provides that “[a]n award of attorney’s fees is appropriate in a divorce case where the requesting party establishes an inability to pay.” Gray v. Gray, 745 So.2d 234, 239 (¶ 26) (Miss.1999) (citations omitted). Additionally, a chancellor may also award attorney’s fees based on a party’s wrongful conduct, as stated in Chesney v. Chesney, 849 So.2d 860, 863 (¶ 12) (Miss.2002), as follows:
There have been a number of prior decisions upholding the award of attorney’s fees to one party where the other party has been found to be in contempt of court or where that party’s actions caused additional legal fees to be incurred. See A & L, Inc. v. Grantham, 747 So.2d 832, 844-45 [ (¶ 60) ] (Miss.1999) (holding that awarding attorney’s fees under certain circumstances, regardless of the party’s ability to pay, is not a reward, but reimbursement for the extra legal costs incurred as a result of the opposing party’s actions); Douglas v. Douglas, 766 So.2d 68, [72 (¶ 14) ] (Miss.Ct.App.2000) (where a party who is entitled to the benefits of a previous judicial decree is forced to initiate further proceedings to gain compliance with the previous order of the court, an award of attorney’s fees is appropriate).
See also McCarrell v. McCarrell, 19 So.3d 168, 172-73 (¶¶ 18-19) (Miss.Ct.App.2009). Further, the issue of whether to award attorneys’ fees in a divorce case constitutes a discretionary matter left to the chancellor, and this Court is “reluctant to disturb” such a finding. Young v. Young, 796 So.2d 264, 268 (¶ 11) (Miss.Ct.App.2001).
¶ 30. Chancellors are instructed to apply the McKee factors in granting or denying attorney’s fees. See McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). However, the chancellor’s September 28, 2010 final judgment, where the chancellor awarded Julianne $1,605 in attorney’s fees, shows no mention of, nor specific findings on, the McKee factors. The chancellor stated only that “evidence reflected that [Julianne’s] attorney’s fees and court costs totaled $1,605.”
¶ 31. Our supreme court has held where there is substantial evidence in the record supporting the chancellor’s *1268 award of attorney’s fees, the omission of specific findings cannot be deemed reversible error. See Varner v. Varner, 666 So.2d 493, 498 (Miss.1995) (no McKee findings); Prescott v. Prescott, 736 So.2d 409, 416 (¶ 31) (Miss.Ct.App.1999) (no finding of inability of recipient to pay). We further note that a specific, on-the-record finding of inability to pay is not necessary where attorney’s fees are awarded due to the other party’s failure to comply with discovery requests. Russell v. Russell, 733 So.2d 858, 863 (¶ 16) (Miss.Ct.App.1999). A specific finding of inability to pay is also not required when attorneys’ fees are assessed against a party found to be in contempt. Mount v. Mount, 624 So.2d 1001, 1005 (Miss.1993).
¶ 32. In the case before us, the chancellor recognized Charles’s continued failure and refusal to comply with the divorce decree, including his failure to make alimony payments, failure to provide medical-insurance coverage, and failure to pay Julianne’s uncovered medical expenses. The chancellor also found Charles in contempt of court for his failure to provide adequate medical-insurance coverage for Julianne. For these reasons, we affirm the chancellor’s award of attorney’s fees to Julianne. This assignment of error is without merit.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
LEE, C.J., IRVING, P.J., ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ„ CONCUR. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND FAIR, J.

. For the purposes of this opinion, “bimonthly” refers to receiving payment twice a month.

. We recognize that the doctrine of res judica-ta precludes a party from litigating claims that were raised or could have been raised in the original action. Howard v. Howard, 968 So.2d 961, 973 (¶ 27) (Miss.Ct.App.2007). Four identities must be present before a subsequent action may be dismissed on the basis of res judicata:
(1) identity of the subject matter of the original action when compared with the action ... sought to be precluded; (2) identity of underlying facts and circumstances upon which a claim is asserted and relief sought in the two actions; (3) identity of the parties to the two actions, and identity met where a party to the one action was in privity with a party to the other; and (4) identity of the quality or character of a person against whom the claim is made.
Id. "If the four identities are present; a party may not raise a claim in a subsequent action.” Id. "This is true regardless of whether all grounds for possible recovery were litigated or asserted in the prior action, as long as those grounds were available to a party and should have been asserted.” Id. (citation omitted).

. We recognize that in matters of alimony, the chancellor has substantial discretion in reaching a decision that will be both "equitable and fair to both parties.” Seale v. Seale, 863 So.2d 996, 999 (¶ 14) (Miss.Ct.App.2004); see also Lane v. Lane, 850 So.2d 122, 125 (¶ 7) (Miss.2002) (explaining that the appellate court will not reverse a chancellor's findings on the issues of alimony unless we first find that the chancellor abused his discretion or was manifestly wrong); Campbell v. Campbell, 357 So.2d 129, 130 (Miss.1978) (holding that a decree of alimony is always subject to modification based upon a material change of circumstances).