# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00040-COA

**KENNETH D. MCDUFF, JR.**                                        **APPELLANT**

**v.**

**TERESA B. MCDUFF**                                               **APPELLEE**

DATE OF JUDGMENT:            07/02/2014
TRIAL JUDGE:                 HON. GEORGE WARD
COURT FROM WHICH APPEALED:   WILKINSON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:     W. BRADY KELLEMS
                             JOSEPH PRESTON DURR
ATTORNEY FOR APPELLEE:       LISA JORDAN DALE
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:     DENIED MOTION TO SET ASIDE
                             PROPERTY SETTLEMENT AGREEMENT
                             AND DIVORCE DECREE
DISPOSITION:                 AFFIRMED: 11/1/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

      **EN BANC.**

      **WILSON, J., FOR THE COURT:**

¶1.     This appeal arises from the denial of a motion filed by Kenneth McDuff pursuant to Rules 59 and 60 of the Mississippi Rules of Civil Procedure.  Kenneth moved to set aside his property settlement agreement (PSA) with his ex-wife, Teresa, and the divorce decree that approved and incorporated the PSA.  Kenneth alleges that he entered into the PSA in reliance on misrepresentations conveyed to him by a mediator during the parties' divorce proceeding. He claims that he is entitled to set aside the PSA and divorce decree because of fraud, misrepresentation, or mistake.  In the alternative, he argues that the chancellor erred by

denying his motion without allowing him to conduct discovery or subpoena the mediator. We find that the chancellor did not err by denying Kenneth's motion and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Kenneth McDuff and Teresa McDuff owned a 380-acre tract of land in Wilkinson County that has been referred to as the "Hill property." The McDuffs also owned an undivided twenty-five acres in a nearby hunting property on Foster Lake. The Foster Lake property's co-owner, Dan Brown, owned an undivided 285 acres. Although Kenneth and Brown were once friends, they had a falling out, and Brown filed a petition to partite the Foster Lake property. Apparently, Brown also accused Kenneth of threatening him or his family or employees with physical violence and with a deadly weapon, and Brown's allegations resulted in criminal charges against Kenneth. In March 2014, Brown offered to settle the partition lawsuit by buying the Hill property and the McDuffs' interest in the Foster Lake tract for $2,000,000. However, Kenneth did not accept Brown's offer.

¶3. While the partition lawsuit was pending, Teresa filed a complaint for divorce from Kenneth. In June 2014, Kenneth and Teresa participated in a mediation, which resulted in a PSA that the chancellor approved and incorporated into a divorce decree. Under the PSA, Kenneth agreed to pay Teresa a lump sum property settlement of $1,000,000, and Teresa agreed to relinquish any interest in the Hill property, the Foster Lake property, another property, and the marital domicile (except that Teresa retained one-half of the oil, gas, and mineral interest in the marital domicile property).

¶4. Kenneth's attorney testified that, during the mediation, the mediator told Kenneth,

2

"[Teresa] is on the phone with [Brown] now. [Brown] has offered to purchase the Hill property only for $2,000,000." Neither Kenneth nor his attorney claims that the mediator specifically stated that Brown would buy the Hill property *from Kenneth* for $2,000,000. Rather, they inferred or assumed that Kenneth could accept Brown's offer and sell the property to Brown for that amount. In addition, neither Kenneth nor his attorney sought to contact Brown or attempted to verify the offer or its details before Kenneth signed the PSA and the chancellor entered the divorce decree. Nonetheless, Kenneth alleges that he agreed to pay Teresa $1,000,000 and entered into the PSA in reliance on the mediator's statement regarding Brown's offer—and his belief that he could accept the offer.

¶5.     After the divorce decree was entered, Kenneth attempted to accept Brown's offer, but Brown responded that no such offer existed, and he declined to pay Kenneth $2,000,000 for the Hill property. Kenneth then filed a motion to set aside the PSA and the divorce decree pursuant to Rules 59 and 60 of the Mississippi Rules of Civil Procedure. Kenneth's motion alleged "misrepresentation and misconduct by Teresa" during the mediation.

¶6.     Brown subsequently testified[1] that he told Teresa that he would consider buying the Hill property from her but not from Kenneth; that he probably would pay her $2,000,000; and that he would buy the property only if he could arrange a section 1031 exchange.[2] Kenneth

---

[1] Brown testified at a hearing in the partition lawsuit.

[2] "Under 26 United States Code Service Section 1031, when property held for productive use in a trade or business or for investment is exchanged for property of like kind that is also to be held either for productive use in a trade or business or for investment, the taxes or credits normally associated with any gain or loss are deferred." *Callicutt v. Prof'l Servs. of Potts Camp Inc.*, 974 So. 2d 216, 217 (¶3) (Miss. 2007).

and his attorney testified that the mediator failed to disclose to them (a) that Brown would buy the Hill property for that price only from Teresa and (b) that Brown's offer was contingent on his ability to arrange a section 1031 exchange. Kenneth alleges that these omissions caused him to believe—due to either misrepresentation or mistake—that Brown would buy the property from him for $2,000,000.

¶7. In connection with his motion under Rules 59 and 60, Kenneth served subpoenas duces tecum on Brown and Teresa and requested the court's permission to depose Brown and Teresa. Kenneth also served a witness subpoena and a subpoena duces tecum on the mediator. Brown, Teresa, and the mediator all filed motions to quash the subpoenas, which the chancellor granted. The chancellor also denied Kenneth's requests to conduct discovery, although he noted that he might revisit the issue after the hearing on Kenneth's motion under Rules 59 and 60.

¶8. At the hearing on Kenneth's motion to set aside the PSA and divorce decree, Kenneth and his attorney both testified regarding the mediator's statements during the mediation. After the hearing, the chancellor denied the motion. In his accompanying opinion, the chancellor found, among other things, that Kenneth's testimony that he relied on an offer from Brown was "incredible." The chancellor also found that Kenneth could have verified the terms of Brown's offer during the mediation but failed to do so.

**DISCUSSION**

¶9. On appeal, Kenneth argues that the chancellor erred by denying his motion to set aside the PSA and divorce decree. In the alternative, he argues that the chancellor erred by

4

denying the motion without allowing him to conduct discovery or subpoena the mediator to testify. We review a chancellor's denial of a motion under Rule 59 or Rule 60 under an abuse-of-discretion standard. *Hanshaw v. Hanshaw*, 55 So. 3d 143, 146 (¶8) (Miss. 2011); *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984). The same standard of review applies to the chancellor's rulings on matters relating to discovery. *Blossom v. Blossom*, 66 So. 3d 124, 126 (¶9) (Miss. 2011).

¶10. We find no abuse of discretion and affirm the chancellor's ruling because no amount of discovery or additional testimony would produce evidence that would warrant setting aside the PSA and divorce decree. A party seeking to set aside a divorce decree based on fraud or mistake must prove four things:

> (1) that the facts constituting the fraud . . . [or] mistake . . . must have been the controlling factors in the effectuation of the original decree, without which the decree would not have been made as it was made; (2) the facts justifying the relief must be clearly and positively alleged as facts and must be clearly and convincingly proved; (3) the facts must not have been known to the injured party at the time of the original decree; and (4) the ignorance thereof at the time must not have been the result of the want of reasonable care and diligence.

*Rogers v. Rogers*, 94 So. 3d 1258, 1264 (¶19) (Miss. Ct. App. 2012) (quoting *Manning v. Tanner*, 594 So. 2d 1164, 1167 (Miss. 1992)); *accord Jenkins v. Jenkins*, 757 So. 2d 339, 343 (¶8) (Miss. Ct. App. 2000) (quoting *Guthrie v. Guthrie*, 226 Miss. 190, 84 So. 2d 158, 161 (1955)); *see also Whitehead v. Johnson*, 797 So. 2d 317, 325 (¶27) (Miss. Ct. App. 2001) ("It is . . . a basic tenet of the law of fraud that any reliance on an alleged fraudulent statement must be reasonable or justifiable. The law as to reliance is the same for a claim based on a negligent misrepresentation." (citations omitted)).

¶11. Kenneth cannot meet this standard even if we accept as fact his testimony that he entered into the PSA in reliance on the mistaken belief that Brown would buy the Hill property from him for $2,000,000. For even if that is true, Kenneth could have discovered that Brown's offer was not open to him had he exercised "reasonable care and diligence." *Rogers*, 94 So. 3d at 1264 (¶19). Kenneth and Brown were engaged in litigation concerning a separate property, and their relationship was contentious, to put it mildly. Kenneth also knew that less than three months earlier Brown was willing to pay $2,000,000 for the Hill property only if Kenneth also gave up his interest in the Foster Lake property. Moreover, even setting aside the history between Brown and Kenneth, a real estate transaction of this significance almost always involves negotiation over terms other than price. *See Transnational Ventures Inc. v. Derr Plantation Inc.*, 187 So. 3d 185, 191-92 (¶¶25-27) (Miss. Ct. App. 2016).

¶12. Under these circumstances, "reasonable care and diligence" would have included—at the very least—confirming with Brown that his reported offer was open to Kenneth and whether the offer involved any other terms or conditions. On appeal, Kenneth protests that it is unreasonable to suggest that he "should have suspended the mediation" to "verify the accuracy" of the mediator's report of Brown's offer. However, *Brown was already talking to Teresa on the phone during the mediation*. If Brown's offer was truly essential to Kenneth's decision to enter into the PSA, Kenneth should have at least asked to speak to Brown directly. Having failed to do so, his ignorance of the limitations of Brown's offer is not a basis for setting aside the PSA or divorce decree.

¶13. In all likelihood, there was no misrepresentation. The mediator reportedly stated that Brown had "offered to purchase the Hill property only for $2,000,000," and the evidence indicates that Brown did make such an offer to Teresa. Kenneth's claim that he relied on a belief that Brown's offer was equally open to him is also dubious given that the mediator never stated that. It would appear that Kenneth relied on his own assumptions about the offer, not anything that the mediator actually said. But even setting these issues aside, the chancellor correctly denied Kenneth's motion to set aside the PSA and divorce decree because Kenneth easily could have learned of the nature and terms of Brown's offer had he exercised reasonable care and diligence. Therefore, we affirm.

¶14. **THE JUDGMENT OF THE WILKINSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**GRIFFIS, P.J., BARNES, CARLTON AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., IRVING, P.J., FAIR AND JAMES, JJ.**

**ISHEE, J., DISSENTING:**

¶15. With regard to the majority opinion, I respectfully dissent. In 2014, Kenneth and Teresa entered into mediation regarding their divorce. An agreement was reached that included a $1,000,000 payment from Kenneth to Teresa. Kenneth agreed to pay Teresa the money based on the purchase of certain marital property by a third-party buyer for $2,000,000. The buyer's offer was conveyed by the mediator. The chancery court later entered an order reflecting the parties' agreement, including the $1,000,000 payment from Kenneth to Teresa. Later, the buyer's offer was rescinded. Kenneth then contested the

7

chancery court's order, arguing that his payment to Teresa was contingent on the sale of the marital property that never occurred. Kenneth further asserted that the buyer's offer was not legitimate and that the mediator and Teresa committed fraud and misrepresentation. As such, Kenneth attempted to subpoena the mediator to testify at a hearing before the chancery court regarding the alleged offer to purchase the marital property. The chancery court quashed the subpoena and eventually denied Kenneth's requests to revisit the divorce order. Kenneth now appeals. Finding error, I would reverse and remand this case to the chancery court for further action consistent with the findings of this opinion.

## STATEMENT OF FACTS

¶16. On June 17, 2014, Kenneth and Teresa entered into a mediation regarding the division of their marital property pursuant to their divorce proceedings. William J. Lutz served as the parties' mediator. Kenneth, Teresa, and their respective attorneys were also present at the mediation.

¶17. Kenneth and Teresa owned several pieces of property, including certain property known as "the Hill property." During the mediation, Teresa represented that she had an offer from a third-party buyer to purchase the Hill property for $2,000,000. Kenneth's attorney testified that Lutz informed them that "[Teresa] is on the phone with [the buyer] now. He has offered to purchase the Hill property only for $2,000,000." Neither Kenneth nor his attorney verified the buyer's offer.

¶18. Nonetheless, based on the buyer's offer, Kenneth agreed to sell the Hill property and pay Teresa $1,000,000. However, the day after the divorce was finalized, the buyer

8

rescinded his offer. In turn, Kenneth contested the judgment of divorce, arguing that he only agreed to pay Teresa the $1,000,000 based on the sale of the Hill property even though the contingent sale was not included in the language of the divorce order. Kenneth further averred that Teresa, the buyer, and Lutz had induced him into agreeing to the payment based on fraud and misrepresentation.

¶19. In preparation for the hearing on the matter before the chancery court, Kenneth requested the chancery court's leave to conduct additional limited discovery regarding the statements of Teresa, the buyer, and Lutz. The chancery court denied Kenneth's motion. Kenneth then attempted to subpoena Teresa, the buyer, and Lutz to testify regarding the alleged terms of the sale. The chancellor quashed all three subpoenas with little explanation. When the hearing concluded, the chancellor denied Kenneth's motion to alter or amend the judgment of divorce. Aggrieved, Kenneth now appeals.

## DISCUSSION

¶20. It is well settled that appellate courts are bound by a limited standard of review in domestic-relations matters. *See, e.g., Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994). The Mississippi Supreme Court has held that a chancellor's findings of fact, especially in domestic-relations cases such as the instant case, "will generally not be overturned by [the appellate court] unless they are manifestly wrong." *Fancher v. Pell*, 831 So. 2d 1137, 1140 (¶15) (Miss. 2002) (citing *Nichols v. Tedder*, 547 So. 2d 766, 781 (Miss. 1989)). The chancellor must have been "manifestly wrong, clearly erroneous, or an erroneous legal standard [must have been] applied," for the findings to be overturned.

*Montgomery v. Montgomery*, 759 So. 2d 1238, 1240 (¶5) (Miss. 2000).

¶21. In quashing the subpoenas, the chancellor provided little explanation for the quashing of Teresa and the buyer's subpoenas and determined that the confidentiality agreement contained in the mediation agreement, in conjunction with applicable mediation rules, prevented Lutz from being subpoenaed. However, there was no hearing regarding the subpoenas, nor were the parties given an opportunity to present evidence to the chancellor regarding their positions on why the subpoenas should or should not be quashed. Kenneth asserts that because he is arguing that the judgment of divorce was procured by fraud or misrepresentation, the chancellor had a duty to hear and consider the arguments of the parties with respect to the subpoenas and the testimonies of Teresa, the buyer, and Lutz in order to properly rule on the matter.

¶22. We recognize our limited standard of review in this matter. However, we also acknowledge a chancellor's obligation to make an informed decision prior to excluding evidence that may be pertinent in determining whether fraud or mistake occurred in the procurement of a judgment. Mississippi Rule of Evidence 1101(b)(1) notes that the Rules of Evidence do not apply to circumstances involving preliminary questions of fact. Specifically, Rule 1101(b)(1) states that evidentiary rules do not apply to "the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility[.]" *Id.* In turn, Mississippi Rule of Evidence 104(a) provides: "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." The comments to Rule 104(a) further note: "Oftentimes preliminary

10

matters will involve a determination of facts." As such, "[w]hen the judge hears evidence on these preliminary questions, he is not bound under Rule 104 to apply the [R]ules of [E]vidence." Lastly, Mississippi Rule of Mediation for Civil Litigation VII.D. permits the chancellor "to determine, in camera, whether the facts and circumstances and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure."

¶23. The record indicates that Kenneth only requested subpoenas for Teresa, the buyer, and Lutz after the chancery court denied his motion to conduct limited discovery into the statements made by the potential witnesses during the mediation. By denying Kenneth's request to allow discovery on this narrow issue and further quashing the subpoenas without a hearing or other informative outlet, the chancery court was without enough information on the matter to make a proper ruling. I find, at a minimum, the chancellor should have allowed for a hearing on the issue of the subpoenas and permitted an in camera review of the witnesses' testimonies. In doing so, the chancellor would have been afforded the opportunity to hear all relative information and thereafter make a comprehensive ruling on whether or not the witnesses should have been subpoenaed. As such, I would reverse and remand the chancery court's judgment for further action consistent with the findings of this opinion.

**LEE, C.J., IRVING, P.J., FAIR AND JAMES, JJ., JOIN THIS OPINION.**

11