WILSON, J.,
FOR THE COURT:
¶ 1. This appeal arises from the denial of a motion filed by Kenneth McDuff pursuant to Rules 59 and 60 of the Mississippi Rules of Civil Procedure. Kenneth moved to set aside his property settlement agreement (PSA) with his ex-wife, Teresa, and the divorce decree that approved and incorporated the PSA. Kenneth alleges that he entered into the PSA in reliance on misrepresentations conveyed to him by a mediator during the parties’ divorce pro *361 ceeding. He claims that he is entitled to set aside the PSA and divorce decree because of fraud, misrepresentation, or mistake. In the alternative, he argues that the chancellor erred by denying his motion without allowing him to conduct discovery or subpoena the mediator. We find that the chancellor did not err by denying Kenneth’s motion and therefore affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Kenneth McDuff and Teresa McDuff owned a 380-acre tract of land in Wilkinson County that has been referred to as the “Hill property.” The McDuffs also owned an undivided twenty-five acres in a nearby hunting property on Foster Lake. The Foster Lake property’s co-owner, Dan Brown, owned an undivided 285 acres. Although Kenneth and Brown were once friends, they had a falling out, and Brown filed a petition to partite the Foster Lake property. Apparently, Brown also accused Kenneth of threatening him or his family or employees with physical violence and with a deadly weapon, and Brown’s allegations resulted in criminal charges against Kenneth. In March 2014, Brown offered to settle the partition lawsuit by buying the Hill property and the McDuffs’ interest in the Foster Lake tract for $2,000,000. However, Kenneth did not accept Brown’s offer.
¶ 8. While the partition lawsuit was pending, Teresa filed a complaint for divorce from Kenneth. In June 2014, Kenneth and Teresa participated in a mediation, which resulted in a PSA that the chancellor approved and incorporated into a divorce decree. Under the PSA, Kenneth agreed to pay Teresa a lump sum property settlement of $1,000,000, and Teresa agreed to relinquish any interest in the Hill property, the Foster Lake property, another property, and the marital domicile (except that Teresa retained one-half of the oil, gas, and mineral interest in the marital domicile property).
¶ 4. Kenneth’s attorney testified that, during the mediation, the mediator told Kenneth, “[Teresa] is on the phone with [Brown] now. [Brown] has offered to purchase the Hill property only for $2,000,000.” Neither Kenneth nor his attorney claims that the mediator specifically stated that Brown would buy the Hill property from Kenneth for $2,000,000. Rather, they inferred or assumed that Kenneth could accept Brown’s offer and sell the property to Brown for that amount. In addition, neither Kenneth nor his attorney sought to contact Brown or attempted to verify the offer or its details before Kenneth signed the PSA and the chancellor entered the divorce decree. Nonetheless, Kenneth alleges that he agreed to pay Teresa $1,000,000 and entered into the PSA in reliance on the mediator’s statement regarding Brown’s offer— and h is belief that he could accept the offer.
¶ 5. After the divorce decree was entered, Kenneth attempted, to accept Brown’s offer, but Brown responded that no such offer existed, and he declined to pay Kenneth $2,000,000 for the Hill property. Kenneth then filed a motion to set aside the PSA and the divorce decree pursuant to Rules 59 and 60 of the Mississippi Rules of Civil Procedure. Kenneth’s motion alleged “misrepresentation and misconduct by Teresa” during the mediation.
¶ 6. Brown subsequently testified[1] that he told Teresa that he would consider buying the Hill property from her but not from Kenneth; that he probably would pay her $2,000,000; and that he would buy the property only if he could arrange a section *362 1031 exchange.[2] Kenneth and his attorney testified that the mediator 'failed to disclose to.them (a) that Brown would buy the Hill property for that price only from Teresa and (b) that Brown’s offer was contingent on his ability to" arrange a section 1031 exchange. Kenneth alleges that these omissions caused him to believe— due to either misrepresentation or mistake—that Brown would buy the property from him for $2,000,000.
¶ 7. In connection with his motion under Rules 59 and 60, Kenneth served subpoenas duces tecum on Brown and Teresa and requested the court’s permission to depose Brown and Teresa. Kenneth also served a witness subpoena and a subpoena duces tecum on the mediator. Brown, Teresa, and the mediator all filed motions to quash the subpoenas, which the chancellor granted. The chancellor also denied Kenneth’s requests to conduct discovery, although he noted that he might revisit the issue after the hearing on Kenneth’s motion under Rules 59 and 60.
¶ 8. At the hearing on Kenneth’s motion to set aside the PSA and divorce decree, Kenneth and his attorney both testified regarding the mediator’s statements during the mediation. After the hearing, the chancellor denied the motion. In his accompanying opinion, the chancellor found, among other things, that Kenneth’s testimony that he relied on an offer' from Brown was “incredible,” The chancellor also found that Kenneth could have verified the terms of Brown’s offer during the mediation but failed to do so.
DISCUSSION
¶9. On appeal, Kenneth argues that the chancellor erred by denying his motion to set aside the PSA and divorce decree. In the alternative, he argues that the chancellor erred by denying the motion without allowing him to conduct discovery or subpoena the mediator to testify. We review á chancellor’s denial of a motion under Rule 59 or Rule 60 under an abuse-of-discretion standard. Hanshaw v. Hanshaw, 55 So.3d 143, 146 (¶ 8) (Miss. 2011); Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss. 1984). The same standard of review applies to the chancellor’s rulings on matters relating to discovery. Blossom v. Blossom, 66 So.3d 124, 126 (¶ 9) (Miss. 2011).
¶ 10. We find no abuse of discretion and affirm the chancellor’s ruling because no amount of discovery or additional testimony would produce evidence that would warrant setting aside the PSA and divorce decree. A party seeking to set aside a divorce decree based on fraud or mistake must prove four things:
(1) 'that the facts constituting the fraud .[or] mistake ... must have been the controlling factors in the effectuation of the original decree, without which the decree would not have been made as it was made; (2) the facts justifying the relief must be clearly and positively 'alleged as facts and must be clearly and convincingly proved; (3) the facts must not have been known to the injured party at the time of the original decree; and (4) the ignorance thereof at the time must not have been the result of the want of reasonable care- and diligence.
Rogers v. Rogers, 94 So.3d 1258, 1264 (¶ 19) (Miss. Ct. App. 2012) (quoting Manning v. Tanner, 594 So.2d 1164, 1167 *363 (Miss. 1992)); accord Jenkins v. Jenkins, 757 So.2d 339, 343 (¶ 8) (Miss. Ct. App. 2000) (quoting Guthrie v. Guthrie, 226 Miss. 190, 84 So.2d 158, 161 (1955)); see also. Whitehead v. Johnson, 797 So.2d 317, 325 (¶ 27) (Miss. Ct. App. 2001) (“It is .... a basic tenet of the law of fraud that any reliance on an alleged fraudulent statement must be reasonable or justifiable. The law as to reliance is. the same for a claim based on a negligent misrepresentation.” (citations omitted)).
¶ 11. Kenneth cannot meet this standard even if we accept as fact his testimony that he entered into the PSA in reliance on the mistaken belief that Brown would, buy the Hill property from him for $2,000,000.. For even if that is true, Kenneth could have discovered that Brown’s offer was not open to him had he exercised “reasonable care and diligence.” Rogers, 94 So.3d at 1264 (¶ 19). Kenneth and Brown were engaged in litigation concerning a separate property, and their relationship was contentious, to put it mildly. Kenneth also knew that less than three months earlier Brown was willing to pay $2,000,000 for the Hill property only if Kenneth also gave up his interest in the Foster Lake property. Moreover, even setting aside the history between Brown and Kenneth, a real estate transaction of this significance almost always involves negotiation over terms other than price. See Transnational Ventures Inc. v. Derr Plantation Inc., 187 So.3d 185, 191-92 (¶¶ 25-27) (Miss. Ct. App. 2016).
¶ 12. Under these .circumstances, “reasonable care and diligence” would have included—at the very least—confirming with Brown that his reported offer was open to Kenneth and whether the offer involved any other terms or conditions. On appeal, Kenneth protests that it is unreasonable to suggest that he “should have suspended the mediation” to “verify the accuracy” of the mediator’s report of Brown’s offer. However, Brown was already talking to Teresa on the phone during the, mediation. If Brown’s offer was truly essential to Kenneth’s .decision to enter into the PSA, Kenneth should have at least asked to speak to Brown directly. Having failed to do so, his ignorance of the limitations of Brown’s offer is not a basis for setting aside the PSA or divorce decree.
¶ 13. In all likelihood, there was no misrepresentation. The mediator reportedly stated that Brown had “offered to purchase the Hill property only for $2,000,000,” and the evidence indicates that Brown did make such -an offer to Teresa. Kenneth’s claim that he relied on a belief that Brown’s offer was equally open to him is also dubious given that the medi- • ator never stated that. It would appear that Kenneth relied- on his own assumptions about the offer, not anything that the mediator actually said. But even setting these issues aside, the chancellor correctly denied Kenneth’s motion to set aside the PSA and divorce decree because Kenneth easily could have learned of the nature and terms of Brown’s offer had he exercised reasonable care and diligence. Therefore, we affirm..
¶ 14. THE JUDGMENT OF THE WILKINSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., BARNES, CARLTON AND GREENLEE, JJ., CONCUR-. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT ' SEPARATE WRITTEN OPINION.-ISHEE, J., DISSENTS WITH ' . • SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., IRVING, P.J., FAIR AND JAMES, JJ.

. Brown testified at a hearing in the partition lawsuit.

. "Under 26 United States Code Service Section 1031, when property held for productive use in a trade or business or for investment is exchanged for property of like kind that is also to be held either for productive use in a trade or business or for investment, the taxes or credits normally associated with any'gain or loss are deferred.” Callicutt v. Prof'l Servs. of Potts Camp Inc., 974 So.2d 216, 217 (¶ 3) (Miss. 2007).